CARBICE CORPORATION OF AMERICA *v.* AMERICAN PATENTS DEVELOPMENT CORPORATION ET AL.

No. 54.   Argued January 16, 19, 1931.—Decided March 9, 1931.

*Mr. Samuel E. Darby, Jr.,* for petitioner.

*Mr. Charles Neave,* with whom *Messrs. George C. Dean* and *Clarence D. Kerr* were on the brief, for respondents.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The American Patents Development Corporation, as owner of United States Patent No. 1,595,426, and the Dry Ice Corporation, as exclusive licensee, brought this suit in the federal court for eastern New York to enjoin contributory infringement by the Carbice Company, for an accounting of profits, and for damages. The defendant denied both the validity of the patent and the alleged infringement. The District Court, without passing upon validity, dismissed the bill on the ground that infringement had not been shown, 25 F. (2d) 730. The Circuit Court of Appeals held the patent valid and infringed, 38 F. (2d) 62. A writ of certiorari was granted, 281 U. S. 711.

Solid carbon dioxide has a temperature of about 110° below zero. When it "melts," it passes directly into a dry, gaseous state—the gas having a like temperature and

being in volume about 500 times that of the solid. These properties make the solid dioxide an excellent dry refrigerant for foodstuffs, particularly for the shipment of ice cream. The refrigerating transportation package, which is the subject of the patent in suit, is made up in this way: Near the middle of the outer box or carton in which the ice cream or other foodstuff is to be shipped, there is placed, in a small container, a quantity of solid carbon dioxide. So placed, this refrigerant is relatively enduring because it is doubly protected from the exterior heat by the ice cream which surrounds it and by the evaporating gas which excludes air and moisture from the shipping case. The ice cream is kept frozen by both the solid and the gaseous dioxide. Although the cost of solid dioxide is about ten times that of water ice, such use is said to have revolutionized the transportation of ice cream, as in this way shipping and handling charges are greatly reduced and the messiness incident to the employment of water ice is eliminated.

The patent in suit is not for solid carbon dioxide. That article and its properties as a refrigerant have been long known to the public. The patent is not for a machine for making solid carbon dioxide. Nor is it for a process for making or using that substance. The Patent Office rejected an application for a process patent. The patent is said to be for a manufacture. The specifications outline the method of construction and use; and a typical claim (6) is for a " transportation package consisting of a protective casing of insulating material having packed therein a quantity of frozen carbon dioxide in an insulating container and a quantity of freezable product in freezing proximity to said frozen carbon dioxide and the gas evaporated therefrom, arranged so that said frozen carbon dioxide is less accessible for exterior heat than said freezable products."

The sole business of the Dry Ice Corporation is the manufacture of solid carbon dioxide which it sells under

the name of " DryIce." It does not make or sell transportation packages in which solid carbon dioxide is used as a refrigerant. It does not issue to other concerns licenses to make such packages upon payment of a stipulated royalty. It does not formally license buyers of its dry ice to use the invention in suit. But each invoice for solid dioxide sold by it bears this notice: " The merchandise herein described is shipped upon the following condition: That DryIce shall not be used except in DryIce Cabinets or other containers or apparatus provided or approved by the DryIce Corporation of America; and that DryIce Cabinets or other containers or apparatus provided or approved by the DryIce Corporation of America shall be refrigerated or used only with DryIce. These uses of DryIce are fully covered by our Basic Method and Apparatus Patent No. 1,511,306. Granted October 14th, 1924, and other Patents Pending." The patent in suit, No. 1,595,426, issued August 10, 1926, is not named in the invoice; but it has been assumed that thereby the Dry Ice Corporation extends to each of its customers, buyers of solid carbon dioxide, a license to use the invention without the payment of royalty. The restrictions as to the purchase of cartons set forth in the invoices of the corporation appear not to have been insisted upon by it.

The Carbice Corporation also manufactures solid carbon dioxide. It is charged with contributory infringement because it sells its product to customers of the Dry Ice Corporation with knowledge that the dioxide is to be used by the purchaser in transportation packages like those described in the patent. The Carbice Corporation challenges the validity of the patent and denies infringement. Whether the transportation package described is a patentable invention we need not determine. For even if it is, no relief can be granted.

The invention claimed is for a particular kind of package employing solid carbon dioxide in a new combination.

If the patent is valid the owner can, of course, prohibit entirely the manufacture, sale, or use of such packages, *Continental Paper Bag Co.* v. *Eastern Paper Bag Co.*, 210 U. S. 405. Or it can grant licenses upon terms consistent with the limited scope of the patent monopoly, *United States* v. *General Electric Co.*, 272 U. S. 476, 489. It may charge a royalty or license fee. But it may not exact as the condition of a license that unpatented materials used in connection with the invention shall be purchased only from the licensor; and if it does so, relief against one who supplies such unpatented materials will be denied.[1] The limited monopoly to make, use, and vend an article may not be " expanded by limitations as to materials and supplies necessary to the operation of it." *Motion Picture Patents Co.* v. *Universal Film Mfg. Co.*, 243 U. S. 502, 515. Compare *United Shoe Machinery Corp.* v. *United States*, 258 U. S. 451, 462; *United States* v. *General Electric Co.*, 272 U. S. 476, 492.

The relief here sought is indistinguishable from that denied in the *Motion Picture* case. There, it was held that to permit the patent-owner "-to derive its profit, not

---

[1] In England the insertion of such a requirement in any license agreement is a complete defense to any defendant charged with infringement. See Patents and Designs Act (1907) 7 Edw. VII, c. 29, § 38, as amended by (1919) 9 & 10 Geo. V, c. 80, § 20, Sched. 38; *Sarason* v. *Frénay* [1914] 2 Ch. 474; *Huntoon Co.* v. *Kolynos, Inc.*, [1930] 1 Ch. Div. 528, 535, 547, 553, 562. The need for such legislative measures to prevent abuse of the patent monopoly has now been recognized by the International Convention for the Protection of Industrial Property. See Actes de la Conférence de La Haye de 1925 (Berne, 1926) pp. 433–34, 606; Ladas, International Protection of Industrial Property, pp. 337–40, 817. In this country the patent statutes similarly provide that an unreasonable delay in formally disavowing patent claims held invalid, and the consequent maintenance of a broader monopoly than warranted, is a complete defense to all infringers, even as to remaining valid claims. Rev. Stat. §§ 4917, 4922; 35 U. S. C. §§ 65, 71. See *Ensten* v. *Simon, Ascher & Co., Inc.*, 282 U. S. 445.

from the invention on which the law gives it a monopoly but from the unpatented supplies with which it is used," is "wholly without the scope of the patent monopoly." P. 517. If a monopoly could be so expanded, the owner of a patent for a product might conceivably monopolize the commerce in a large part of unpatented materials used in its manufacture. The owner of a patent for a machine might thereby secure a partial monopoly on the unpatented supplies consumed in its operation. The owner of a patent for a process might secure a partial monopoly on the unpatented material employed in it. The owner of the patent in suit might conceivably secure a limited monopoly for the supplying not only of solid carbon dioxide, but also of the ice cream and other foods, as well as of the cartons in which they are shipped.[2] The attempt to limit the licensee to the use of unpatented materials purchased from the licensor is comparable to the attempt of a patentee to fix the price at which the patented article may be resold. *Bauer & Cie* v. *O'Donnell*, 229 U. S. 1; *Straus* v. *Victor Talking Machine Co.*, 243 U. S. 490; *Boston Store* v. *American Graphophone Co.*, 246 U. S. 8. Compare *Bobbs-Merrill Co.* v. *Straus*, 210 U. S. 339. In both classes of cases, courts deny relief against those who disregard the limitations sought to be imposed by the patentee beyond the legitimate scope of its monopoly.[3]

---

[2] See, also, the examples given by Chief Justice White, dissenting in *Henry* v. *A. B. Dick Co.*, 224 U. S. 1, 55. "The very existence of such restrictions suggests that in its absence a competing article of equal or better quality would be offered at the same or at a lower price. . . ." Vaughan, Economics of Our Patent System, pp. 125–127.

[3] The patent grant is inherently limited in other respects. A patent covering an essential instrumentality does not enable a patentee or its licensee thereby to abridge its obligations as a public utility; the exclusive right to license use of the invention cannot be so exercised. *Missouri ex rel. Baltimore & O. Tel. Co.* v. *Bell Tel. Co.*, 23 Fed. 539,

Plaintiffs seek to distinguish the *Motion Picture* case from that at bar, by pointing out that there, as in *Henry* v. *A. B. Dick Co.*, 224 U. S. 1, the unpatented supplies, over which the licensor sought to extend its monopoly, were merely used in the patented machines, whereas here the unpatented refrigerant is one of the necessary elements of the patented product. And to distinguish the case at bar from *Morgan Envelope Co.* v. *Albany Perforated Wrapping Paper Co.*, 152 U. S. 425, 433, it is pointed out that the Carbice Corporation is furnishing not a passive element in the combination, like the paper in the *Morgan Envelope* fixture, but the dynamic element which produces refrigeration. These distinctions are without legal significance. Infringement, whether direct or contributory, is essentially a tort, and implies invasion of some right of the patentee. Compare *Moore* v. *Marsh*, 7 Wall. 515, 520; *Root* v. *Railway Co.*, 105 U. S. 189, 214. The Dry Ice Corporation has no right to be free from competition in the sale of solid carbon dioxide. Control over the supply of such unpatented material is beyond the scope of the patentee's monopoly; and this limitation, inherent in the patent grant, is not dependent upon the peculiar function or character of the unpatented material or on the way in which it is used. Relief is denied because the Dry Ice Corporation is attempting, without sanction of law, to employ the patent to secure a limited

---

appeal dismissed, 127 U. S. 780; *State ex rel. Postal Tel. Cable Co.* v. *Delaware & A. Tel. & Tel. Co.*, 47 Fed. 633, affirmed, 50 Fed. 677. Nor does the grant of a United States patent exempt the patented product from limitations imposed by state police statutes. *Patterson* v. *Kentucky*, 97 U. S. 501; *Allen* v. *Riley*, 203 U. S. 347; *John Woods & Sons* v. *Carl*, 203 U. S. 358; *Ozan Lumber Co.* v. *Union County National Bank*, 207 U. S. 251. Compare *Webber* v. *Virginia*, 103 U. S. 344, 347. See note 1, *supra.* Nor can a patent be made the basis of an unconscionable contract. *Pope Mfg. Co.* v. *Gormully*, 144 U. S. 224.

monopoly of unpatented material used in applying the invention. The present attempt is analogous to the use of a patent as an instrument for restraining commerce which was condemned, under the Sherman Anti-Trust Law, in *Standard Sanitary Mfg. Co.* v. *United States,* 226 U. S. 20.[4]

The case at bar is wholly unlike *Leeds & Catlin* v. *Victor Talking Machine Co.,* 213 U. S. 325, 333, on which plaintiffs rely. That was an ordinary case of contributory infringement. The Victor Company sold machines embodying a patent for a combination. Leeds & Catlin were held to be infringers because the intended incorporation in the Victor machines of the article which they sold, did not constitute a repair of the machine and hence was not within the license implied on sale. *Heyer* v. *Duplicator Mfg. Co.,* 263 U. S. 100. There was no suggestion that the Victor Company, which itself manufactured and sold the patented product, sought " to derive its profits, not from the invention on which the law gives it a monopoly, but from the unpatented supplies with which it is used." In the case at bar the plaintiffs neither sell nor license others to sell complete transportation packages. They supply merely one of the several materials entering into the combination; and on that

---

[4] In such cases, the attempt to use the patent unreasonably to restrain commerce is not only beyond the scope of the grant, but also a direct violation of the Anti-Trust Acts. Compare § 3 of the Clayton Act, October 15, 1914, c. 323, 38 Stat. 730, 731, which prohibits any lease, sale, contract, or agreement tending to create a monopoly in any line of commerce, and is applicable to all " goods, wares, merchandise, machinery, supplies or other commodities, whether patented or unpatented. . . ." See *United Shoe Mach. Co.* v. *United States,* 258 U. S. 451, 460; *Lord* v. *Radio Corp. of America,* 24 F. (2d) 565, 566–67, affirmed, 28 F. (2d) 257, certiorari denied, 278 U. S. 648, decree entered, 35 F. (2d) 962, affirmed, 47 F. (2d) 606. Compare, as to trade secrets, *Dr. Miles Medical Co.* v. *Park & Sons Co.,* 220 U. S. 373, 401.

commodity they have not been granted a monopoly. Their attempt to secure one cannot be sanctioned.[5]

*Reversed.*

---

[5] Restrictions on the manner of use, essential to prevent unwarranted extension, are inherent in other limited monopolies. Thus, a trademark may not be used as a means of misrepresentation. *Worden* v. *California Fig Syrup Co.,* 187 U. S. 516; *Mulhens & Kropff, Inc.,* v. *Ferd. Muelhens, Inc.,* 43 F. (2d) 937; *Leather Cloth Co., Ltd.,* v. *American Leather Cloth Co., Ltd.,* 4 De G. J. & S. 137, affirmed, 11 H. L. C. 523. Nor a tradename as a means of deception. *Memphis Keeley Institute* v. *Keeley Co.,* 155 Fed. 964; *Royal Baking Powder Co.* v. *Federal Trade Commission,* 281 Fed. 744; *Federal Trade Commssion* v. *Bradley,* 31 F. (2d) 569.