## AMERICAN LECITHIN CO. v. WARFIELD CO.

### No. 14910.

District Court, N. D. Illinois, E. D.

Feb. 16, 1938.

Ira J. Wilson, of Chicago, Ill., for plaintiff.

Cassels, Potter & Bentley and Chritton, Wiles, Davies, Hirschl & Dawson, all of Chicago, Ill., for defendant.

WILKERSON, District Judge.

The plaintiff, American Lecithin Company, has brought this suit against the defendant charging infringment of its patent No. 1,781,672, dated November 11, 1930, by, the use of lecithin in the production of chocolate in accordance with the method defined in the claims of the patent. Besides denying the validity of the patent, the defendant interposed a defense based upon the case of Carbice Corp. v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819. The defendant insisted that this suit could not be maintained, even if the patent were valid, because to do so would give a limited monopoly of an unpatented article of commerce, lecithin.

The nature of the patent and the problems in the chocolate industry which plaintiff contends were solved by the patent in suit are reviewed in American Lecithin Co. v. J. C. Ferguson Manufacturing Works, D.C.R.I.,1937, 19 F.Supp. 294. Since I find it unnecessary to consider the validity of the patent, I shall not mention, except in brief, the matters covered in that opinion. The chocolate industry had long been suffering heavy losses by reason of changes in the appearance of chocolate, known as graying or blooming. The patent is for a process to retard such graying or blooming. The patent adds .1 per cent. to 1 per cent. of lecithin (an unpatented article) to the cocoa butter content of chocolate in the course of manufacture. Originally, the defendant purchased its supplies of lecithin from the plaintiff, and used this lecithin with the plaintiff's consent to make chocolate according to the patented process. The alleged infringement· of the patent consists of defendant's purchasing lecithin from sources other than the plaintiff and using this lecithin in accordance with the method defined in the claims of the patent.

Plaintiff's method of doing business is as follows: It does not issue any formal license to any one to use its patent. It does not itself make chocolate and does not collect royalties from others for the use of its process. Upon the purchase from it of lecithin, the plaintiff acquiesces in the use of its patent. When the lecithin thus sold by plaintiff has been used up by the customer, this acquiescence, as well as the permissive use of the patent, allegedly ceases. See American Lecithin Co. v. J. C. Ferguson Mfg. Works, D.C., 19 F. Supp. 294, 300.

I am of the opinion that this method of doing business falls within the condemnation of the recent case of Leitch Mfg. Co., Inc. v. Barber Co., 1938, 302 U.S. 458, 58 S.Ct. 288, 289, 82 L.Ed. ——, as the "practical equivalent of granting a written license with a condition that the patented method may be practiced only with" lecithin purchased from it. To use the language of the Leitch Case, "the sole purpose to which the patent is put is thereby to suppress competition in the production and sale of staple unpatented material for" use in chocolate making.

In the Leitch Case, the plaintiff and the defendant were competing manufacturers of bituminous emulsion, an unpatented article of commerce. Builders of cement concrete roads had come to use emulsion as a film on the surface of the roadway to retard evaporation during curing. The plaintiff acquired the process patent sued upon, which covered a method of retarding this evaporation. The company did not itself build roads, it did not require royalties, and it did not issue licenses. Any road builder who bought emulsion from it received, by implication of law, authority to practice the invention. The defendant was a competing manufacturer of the unpatented material, who sold it to a road builder for use with the patented process. The Supreme Court held that the patent did not confer upon the plaintiff the right to be free from competition in supplying unpatented material to be used in practicing the invention.

While the Leitch Case involved a contributory infringer, I believe that its doctrine is applicable in the present suit against the alleged direct infringer. The doctrine so clearly formulated in the Leitch Case grows out of the case of Carbice Corp. v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819. While that case also involved a suit against a contributory infringer, it was thought that its doctrine would be extended to direct infringers and that the opinion might be taken to mean that an otherwise valid patent right would not be enforced to prevent even direst infringement when the patent was being utilized to gain a monopoly beyond its legitimate scope. 45 Harvard Law Review 1119 (1932). The Supreme Court

itself in the Carbice Case (page 31, 51 S.Ct. 335) took cognizance of the fact that in some jurisdictions it had been held (Huntoon Co. v. Kolynos [1930] 1 Ch. Div. 528) that the insertion of a condition in a license agreement that unpatented materials used in connection with the invention should be purchased only from the licensor established a complete defense to a charge of infringement.

The language in the Leitch Case indicates that the reasons for denying relief in this type of case rest upon broad policy grounds and not upon narrow legal distinctions. The court in the Carbice as well as in the Leitch Case denied relief because the owner of the patent monopoly sought by its method of doing business to extend its monopoly to unpatented material, in contravention of the limitations inherent in its patent grant. By the rule declared in those cases, "every use of a patent as a means of obtaining a limited monopoly of unpatented material is prohibited. It applies whether the patent be for a machine, a product, or a process. It applies whatever the nature of the device by which the owner of the patent seeks to effect such unauthorized extension of the monopoly." Leitch Mfg. Corp., Inc., v. Barber Co., 1938, 302 U.S. 458, 58 S.Ct. 288, 290, 82 L.Ed. ——. In my opinion, the doctrines also apply whether the person sued be a direct or a contributory infringer. The operation of the principle of public policy does not distinguish between the two.

I accordingly find that the plaintiff is not in a position to maintain this suit. In view of the foregoing conclusion, it is not necessary to pass upon the validity of the patent or defendant's claim to a shop license for the life of plaintiff's patent. The bill should, therefore, be dismissed.