## AMERICAN LECITHIN CO. v. WARFIELD CO.

No. 7923.

Circuit Court of Appeals, Seventh Circuit.

June 4, 1942.

John W. Thompson, of New York City, and Ira J. Wilson, of Chicago, Ill., for appellant.

Charles J. Merriam, Marcus A. Hirschl, and Wm. Warfield, III, all of Chicago, Ill., for appellee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

Plaintiff charged defendant with infringement of Patent No. 1,781,672, issued November 11, 1930, to Working. The defenses were invalidity, noninfringement, and misuse of the patent in such a way as to create a monopoly in an unpatented commodity sold by plaintiff. The District Court found that plaintiff was using the patent to create a monopoly in lecithin, an unpatented commodity; that all the claims were invalid; that the defendant did not infringe claims 4, 9, 10, 11 or 13, but did infringe claims 6 and 12 if they were valid; and dismissed the complaint. From that decree, this appeal is prosecuted. 42 F.Supp. 270.

In a previous case charging infringement, the District Court, without passing upon the question of infringement or invalidity of the patent, decreed that the plaintiff had not come into court with clean hands. 23 F.Supp. 326. This court affirmed 105 F.2d 207. In the present case plaintiff claimed that in March, 1938, it had ceased the conduct which resulted in the holding of unclean hands.

Since we are of the opinion that the patent is invalid, it will not be necessary to discuss plaintiff's contention that after the previous case had been concluded, it abandoned its earlier practice of permitting use of the patent only with lecithin purchased from it.

The patent recites 13 claims, of which claims 4, 6, 9, 10, 11, 12 and 13 are involved in this case, and as they appear in the opinion of the District Court at page 275 of 42 F.Supp., it will not be necessary to restate them.

We learn from this record that chocolate coatings on candy, which are in most cases a mixture of chocolate liquor, sugar, and cocoa butter, have a tendency to bloom or become gray, losing their brilliancy or gloss, owing to the melting and movement of the cocoa butter, and become unsaleable. As a result, those working in this field sought a method for preventing or retarding the graying, as well as to accomplish the reduction in the amount of cocoa butter used. Plaintiff says that prior to Working, no chocolate maker, or any other person who might normally be expected to do so, found a solution; that Working discovered and put into beneficial use a property of lecithin never before disclosed or suggested, thereby producing unpredictable and unexpected effects on chocolate when the lecithin was added in the minute quantities set forth in the claims of his patent; and thus he solved the problem.

Lecithin is a natural organic substance occurring in practically all living cells and in considerable quantities in egg yolk and in seeds of most plants. As early as 1905 it was found and reported in a sample of commercial chocolate examined in the analytical laboratory in Leipzig, Germany. This analysis was published in 1907, Journal of Research for Food Materials, and in book form in 1923. Armin Rohrig's analysis of lecithin chocolate, 1905, Report of the Leipzig Chemical Investigation Institute, described a chocolate containing 0.35% lecithin. Lecithin was used in small volume in the pharmaceutical industry at a cost of as much as $32 per pound, a prohibitive price for commercial use in the chocolate industry. In 1912, an article by E. Merck discussed the use of 10% of lecithin in chocolate.

In his specifications Working said: "The amount of lecithin to be employed can vary between rather wide limits. Ordinarily,

from 0.1% up to 0.5% is a sufficient amount of lecithin to add for very materially improving chocolate coatings, but in some cases I may run the amount of lecithin up to 1%, or even slightly more than this." He continues: "The fat content of chocolate coatings, in most cases, consists in large part at least, of cocoa butter, which is a composite fat, composed of different glycerides having different melting points. As the temperature gradually increases, portions of the cocoa butter may soften and melt, and when in a molten state these low melting fractions exude to the surface. * * * On subsequently cooling, this will harden and solidify on the surface, giving the 'graying' of the chocolate, * * *. This makes the confectionery appear 'stale' and interferes with the sale of the product. * * * This action is prevented or retarded to a considerable extent, by adding a material, lecithin, which binds or blends the fats together, preventing separation of the same from the chocolate mass. * * * Ordinary chocolate mass used for coating, in the prior art, contains around 35% of cocoa butter, or frequently slightly more than this. When using about 0.3% of lecithin, the amount of cocoa butter can be reduced to about 30%. Since cocoa butter is a relatively expensive fat, any substantial reduction in the amount thereof is of commercial importance to the manufacturer. * * * Such a mass will have about the same viscosity or fluidity, at the temperature at which it is to be applied as a coating to candy, cakes and the like, as the 35% mass heretofore employed. * * * the reduction in the fat content aids in preventing graying."

The court found that adding lecithin to chocolate reduces viscosity and the amount of cocoa butter required to be added to chocolate to make it workable, but does not lessen or prevent graying.

Plaintiff asserts that Working's discovery created a new art possessing great merit; that his method or process was promptly applied by the chocolate and candy industries, not only to their material advantage, but to the benefit of the public by effecting economies of raw materials; and that the defendant has appropriated the invention by adding between .1% and 1% of lecithin to chocolate coating material.

The defendant's appraisal of the invention is definitely to the contrary. It contends that Working was not the first to add lecithin to chocolate, that the method was known, or if not completely realized, the result came from mere routine investigation.

Whether Working's contributions evidenced patentable novelty depends upon the state of the prior art and the practice known or disclosed at the time he made his application for the patent. Our appraisal of his contributions must be made in the light of this art.

Claims 4, 9, 10, 11 and 13 are limited to a material or process in which graying of chocolate is reduced or retarded. Defendant admitted using .1% to .5% of lecithin in chocolate coating material. Claim 6 merely states that a chocolate mass containing not substantially over 1% of lecithin has greater tolerance to water. Claim 12 relates to the reduction of viscosity and the saving of cocoa butter. Defendant uses lecithin because it reduces the amount of cocoa butter required.

The record discloses that the defendant introduced in evidence prior art patents, chemical reports, and publications showing that the use of lecithin in chocolate was well known.

The Bollmann patent, No. 1660541, issued February 28, 1928, for an "Easily-soluble cocoa powder and process of making the same," describes the addition of up to 2% of phosphatides, of which lecithin is one, to cocoa powder, and teaches that lecithin maintains in suspension the particles of cocoa floating in the liquid, prevents the particles from separating, and improves the solubility of cocoa butter. The Rewald patent, No. 1762077, issued June 3, 1930, for "Production of egg-yolk substitutes," describes the resistance of fat-containing lecithin to water, and points out the emulsifying effect of lecithin and the tolerance of the mass to the water.

The File Wrapper discloses that Working's original application, filed May 13, 1929, related only to the use of lecithin with chocolate or cocoa to prevent graying. In November, 1929, an article by Sherman Woodrow entitled "Lecithin, A New and Unusual Weapon in the War Against 'Bloom,'" was published in the "Manufacturing Confectioner." In this article the author showed that the addition of lecithin to chocolate lowered its viscosity and that its use would effect an economy in cocoa butter. Thereafter, an article by A. G. Avent, published in February, 1930, dis-

cussed the question of reducing the viscosity of chocolate by adding lecithin. These articles were brought to the attention of plaintiff's president and he called on one A. B. Foster, an attorney handling Working's application. Foster, on June 18, 1930, wrote Working advising him that the reduction in cocoa butter content was not shown in the application and could not be added without introducing new matter, and pointed out that when lecithin is used, the tendency of chocolate mass to become much thicker when water is present, is greatly reduced.

The record also discloses that on July 12, 1928, before Working began to work on lecithin in chocolate, one James W. Conway wrote to Working saying: "The principal field at present is the addition of a very small percentage of lecithin to Nut Margarine, which conveys to the latter all the foaming and browning effects of dairy butter. Also, we are developing the use of Vegetable Lecithin as a component of chocolate, cocoa, and other food products, not only as a carrier of very high food value, especially for the nerves, not increasing the cost, but increasing the solubility of the cocoa, which, of course, means that the sediment in the prepared cocoa will be reduced, * * *." It thus appears that it was Conway who had suggested to Working that lecithin could be used as a component of chocolate and that when so used, it would increase the solubility of the cocoa. February 11, 1929, Working wrote Conway and said: "The process of incorporating lecithin in chocolate is very easy. I have not had time to conduct any comparative tests to show the best amount to use, but would suggest trying in the range of from 0.1% to 0.5%. * * * You are of course aware that the 'graying' of chocolate is a source of very serious loss to the manufacturers. It is my opinion that lecithin will largely avoid this trouble; that is, the chocolates will stand a temperature several degrees higher before graying sets in, if lecithin is used in the coating. However, I have not yet proved this point, not having had time to carry out accurately controlled experiments on it." On June 12, 1929, Working advised plaintiff's president: "When I first told Conway that I thought lecithin would retard graying in chocolate, I had nothing but theory upon which to base my opinion." It also appears that Working had made six experiments between September 22, 1928, and January 28, 1929, but the record does not disclose that he made any tests after February 11, 1929.

The District Court found that the "original Working application, which was filed on May 13, 1929, related only to the use of lecithin with chocolate or cocoa to prevent graying. There is no mention of reduction of viscosity or of the addition of less cocoa butter than normal to make a chocolate coating. In November, 1929, an article was published in the 'Manufacturing Confectioner.' That article stated that the addition of lecithin to chocolate lessens its viscosity. In February, 1930, another article in the same magazine told of the savings in cocoa butter and the reduction of viscosity. These articles were called to the attention of Mr. Eichberg, an officer of plaintiff. He called on the patent solicitor who was handling the Working application and on that day the solicitor wrote to Working. In this letter he pointed out that the reduction in cocoa butter content was not shown in the old application and could not be added without introducing new matter. The letter also referred to the tendency of lecithin to increase the resistance of the chocolate mass to water. None of these ideas was in the original application. The plaintiff has not offered evidence which * * * carries Working's date back of these articles," [42 F.Supp. 279] and in the opinion of the court the disclosures were the results of mere routine investigation by a skilled chemist.

While plaintiff concedes that there are cases holding that the discovery of the optimum of a known effect by routine procedures does not constitute invention, it argues that Working's invention has to do only with chocolate and the specific fat, cocoa butter, by adding lecithin to overcome the thickening effect of moisture on chocolate melted by heat, while Rewald describes a resistance to decay of organic matter in an aqueous emulsion wherein lecithin is the emulsifier; that Bollmann gave no instructions regarding chocolate and that Conway gave no suggestion regarding the amount of lecithin to be added to the chocolate and cocoa.

It is apparent that the element which Working claims he contributed was the exact proportions of 0.1% to 0.5% suggested on February 11, 1929, in his letter to Conway. It is interesting to note that this percentage is not claimed in most of

his claims. Claim 4 is the only one so limited, while claims 6, 9 and 10 state that the amount of lecithin is not substantially over 1% and claims 11, 12 and 13 specify 0.2% to 0.3%.

While it is true that the amount of work which a patentee has to do is not necessarily an indication of the quality of his invention, nevertheless, it is a factor which must be considered. As we have already observed, lecithin was found and reported in 1905; Merck, in 1912, discussed the use of 10% of lecithin in chocolate; Bollmann in 1928 taught that lecithin maintains in suspension and prevents the particles floating in cocoa butter from separating, thus improving the solubility of cocoa butter; Rewald described the resistance of fat containing lecithin to water, pointed out the emulsifying effect of lecithin, and the tolerance of the chocolate mass to the water; Woodrow and Avent showed that the addition of lecithin to chocolate lowered its viscosity; and Conway, in 1928, suggested that lecithin could be used as a component of chocolate, without increasing the cost, by increasing the solubility of the cocoa, and that lecithin will melt at 50-60° C. and would not suffer in any way from such heating. From these facts it is clear to us that the patents, articles, and letter cited, taught everything which Working claimed, except the particular range of proportions of 0.1% to 1% specified in the claims. To find the range, required nothing more than routine experimentation by a skilled chemist, and that being so, invention was not involved. Hamilton Laboratories v. Massengill, 6 Cir., 111 F.2d 584.

The plaintiff also argues that the case must be reversed because Working's testimony, corroborated by that of his wife and Isabelle Gillum, and his notes of test procedures showing he then knew that chocolate with .5% lecithin melted faster, dipped more easily, had a better gloss and retarded graying, carried the invention back to a time before his first application and antedated the Woodrow and Avent articles.

The law is well established that where one seeks to carry the date of invention back of the date of anticipating patent, he assumes the burden of proof and the evidence must be clear and unequivocal. The evidence claiming to establish an earlier date must be so cogent as to satisfy the court that the transaction occurred substantially as stated, Moline Plow Co. v. Rock Island Plow Co., 7 Cir., 212 F. 727. Our examination of this record has convinced us that the court was warranted in finding that there was no credible proof carrying the date back of the Woodrow and Avent articles.

The decree of the District Court is affirmed.