EMSIG MANUFACTURING CO., a partnership composed of Max Emsig, Sidney Emsig, Jack Emsig and Joseph Sucher, Plaintiff,

v.

ROCHESTER BUTTON COMPANY, a corporation of New York and Rochester Button Machine Corp., a corporation of New York, the latter by change of name to Speed Feed Machine Corporation, Defendants.

United States District Court
S. D. New York.
July 9, 1958.

oly in the sale of unpatented or unpatentable commodities." The motion for summary judgment is based solely on this defense.

The defendants allege that the following facts exist, without substantial controversy: (1) that the parties are manufacturers of buttons, (2) that the patent relates to button feeding machines for attachment to commercial sewing machines, (3) that plaintiff manufactures and leases these machines and that the form of lease used by the plaintiff has in it the following provisions:

> "Lessee and its designee shall use only shank buttons, approved in writing by Lessor, in the Feeder."

> "Lessor assures repairs and adjustments of its Feeder without charge when using shank buttons approved by it;"

(4) that shank type buttons are not covered by the patent in suit or by any other patent, and (5) that one of plaintiff's salesmen testified on deposition that he was often instrumental in leasing the button feeding machines and that it had been his practice to insist on an order for buttons before he would lease the machine.

While the Court concludes that items 1 through 4 hereinabove stated exist without substantial controversy, and that the salesman referred to in item 5 did make the statements referred to above, it cannot conclude that the salesman's practice constituted a policy of the plaintiff, or that the plaintiff practiced a course of business which would seem to be assumed from the answers to the questions on the salesman's deposition. These conclusions are controverted by the plaintiff and the affidavits submitted with reference thereto show that substantial questions of fact arise in connection with the practice followed by the plaintiff in supplying buttons for the leased machines.

The defense of patent misuse, upon which the defendants rely in making this motion, is based essentially upon the fact that a plaintiff, in order to seek equitable relief, must come into equity

J. T. Basseches, New York City, for plaintiff, Mark T. Basseches, New York City, of counsel.

Kenyon & Kenyon, New York City, for defendant, Theodore S. Kenyon, Ralph L. Chappell, Hugh A. Chapin, New York City, of counsel.

DAWSON, District Judge.

This is a motion made by the defendants under Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A. for summary judgment dismissing the complaint. The action is one for patent infringement. In the answer the defendants allege, as part of an affirmative defense, that "plaintiff is not entitled to any relief or recovery based on alleged infringement of United States Letters Patent No. 2,-597,912 because it has been employed, and is being employed, in a manner calculated to establish for plaintiff a monop-

with clean hands, and that if such a plaintiff has used the patent in an attempt to secure a monopoly over unpatented goods, it may not be entitled to relief as to that patent in a patent infringement action. See Morton Salt Co. v. G. S. Suppiger Co., 1942, 314 U.S. 488, 493, 62 S.Ct. 402, 86 L.Ed. 363; Carbice Corp. v. American Patents Dev. Corp., 1931, 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819:

> "Relief is denied because the Dry Ice Corporation is attempting, without sanction of law, to employ the patent to secure a limited monopoly of unpatented material used in applying the invention." At page 33 of 283 U.S., at page 336 of 51 S.Ct.

■ In asserting this defense the defendants have the burden of establishing that the plaintiff is employing the patent to secure a "limited monopoly of unpatented material." The plaintiff denies that its leasing methods or practices have been such as to secure or attempt to secure to it a limited monopoly on unpatented products. It claims that all that it has done is to make certain that the buttons used in its leased machines are such that they will successfully operate with the machine and are not such as will cause damage to the machine or injury to the operators of the machine. The plaintiff, it appears, does not require that any particular buttons or any buttons sold by it have to be used on the machine but merely recommends buttons of a type approved by it. Plaintiff has in its lease undertaken to repair without charge all machines using approved buttons, and has not restricted repairs to machines using its buttons. Whether such requirement has resulted or would result in a monopoly of any unpatented buttons used with the machine would be a question of fact which would depend upon proof as to the types of buttons which have been used, the practical effect of the lease on the use of buttons of other manufacturers, etc. It cannot be assumed merely from the language of the lease that a monopoly was established or even attempted. Defendants argue that this lease in itself and plaintiff's practices constitute a "tying" agreement and such arrangements have been condemned under the anti-trust laws as serving no purpose beyond the suppression of competition. International Salt Co. v. United States, 1947, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20; Black v. Magnolia Liquor Company, 1956, 355 U.S. 24, 25, 78 S.Ct. 106, 2 L.Ed. 5. Tying agreements may be express or implied, or may be inherent in the practices of the patentee in granting licenses only to those who purchase the unpatented product from him or in allowing such purchaser a discriminatory lower royalty rate. See Report of the Attorney General's Committee to Study the Anti-trust Laws, at p. 237, n. 256 (1955). However, there is a clear question of fact here as to whether the patentee has conditioned the leasing of the feeder machines on the purchase of buttons. Such an agreement cannot be inferred on this motion for summary judgment solely from the provisions of the lease, or from the depositions and papers submitted. Further, "a lessor may impose on a lessee reasonable restrictions designed in good faith to minimize maintenance burdens and to assure satisfactory operations." International Salt Co. v. United States, supra 332 U.S. at page 397, 68 S.Ct. at page 16. Although the "rules for use of leased machinery must not be disguised restraints of free competition [lessors] may set reasonable standards which all suppliers must meet." Id. 332 U.S. at page 398, 68 S.Ct. at page 16. Plaintiff contends that this is the sole purpose and effect of the lease and of its practices, and this is a matter which will have to be determined by the court at the trial of the action.

■ The affidavits presented by the plaintiff thus show that substantial issues of fact exist. These facts should be determined at the trial when the parties will have a full opportunity to present evidence to the court and to test such evidence in the crucible of examination and cross-examination. Gray Tool Co. v. Humble Oil & Refining Co., 5 Cir.,

1951, 186 F.2d 365; 6 Moore, Federal Practice, Par. 56.15[4]. Since substantial issues of fact exist, this Court has no power to grant the summary judgment sought by the defendants.

The motion is denied. So ordered.