Gordon V. GRIFFIN

v.

KEYSTONE MUSHROOM FARM, INC.

Civ. A. No. 77–3349.

United States District Court,
E. D. Pennsylvania.

July 17, 1978.

Synnestvedt & Lechner by M. Richard Page, Philadelphia, Pa., Criddle, Thorpe & Weston, P. C. by Vaughn W. North, M. Richard Page, Philadelphia, Pa. and Vaughn W. North, Salt Lake City, Utah, for plaintiff.

Dechert, Price & Rhoads, Harvey Bartle, III, Philadelphia, Pa., for defendant.

OPINION

JOSEPH S. LORD, III, Chief Judge.

Plaintiff in this patent infringement suit is the holder of United States Patents Nos. 3,386,705 and 3,791,593 for a composting machine and certain parts of composting machinery, respectively. Defendant, which has counterclaimed for declaratory judgment with regard to the patent suit and for breach of contract, now moves for partial summary judgment on the infringement claims and on its counterclaim for declaratory judgment of non-infringement. Accepting as the factual record the account of events presented by the defendant in its affidavits and exhibits, we find the defense to infringement deficient as a matter of law and will deny the motion.

The plaintiff holds patents for these inventions in Italy as well as in the United States. He had granted before 1975 an exclusive license to Longwood Manufacturing Corporation to make, use and sell the patented composting machine in the United

States, and he granted on July 28, 1975, an exclusive license to Celeste Carminati to practice in Italy and in other European Economic Community nations the art patented under the laws of Italy. The defendant's president purchased a composting machine from Carminati, *f.o.b. Genoa,* in late 1975, and the defendant purchased two more machines from Carminati in 1976, *f.o.b. Genoa.* The defendant, a mushroom grower and supplier of equipment and materials to mushroom farmers in Pennsylvania, has used the first-purchased of these composters in its own business and has sold the other two. Infringement of the United States patent is alleged on the basis of the use and sale of these three machines.

Defendant concedes for purposes of this motion that the United States patents in suit are valid and enforceable, that the three machines embody the patented inventions and that the plaintiff had granted an exclusive licensing agreement for practicing them in this country. It has advanced two legal grounds for this motion, both of which rely on its purchase of the machines in Italy from Carminati to defeat the plaintiff's infringement action.

The defendant's first contention is that its purchase of the machines from Carminati, who was authorized under Italian law to sell them, released these articles from the patent monopoly. In support of this argument the defendant relies on the clear and indisputable proposition that "upon familiar principles the authorized sale of an article which is capable of use only in practicing the patent is a relinquishment of the patent monopoly with respect to the article sold." *United States v. Univis Lens Co.,* 316 U.S. 241, 249, 62 S.Ct. 1088, 1093, 86 L.Ed. 1408 (1942). *See also Adams v. Burks,* 84 U.S. 453, 21 L.Ed. 700 (1873); *Bloomer v. McQuewan,* 55 U.S. 539, 14 L.Ed. 532 (1852). In effect, the defendant seeks to extend beyond national borders the rule in *Univis Lens Co.* concerning escape from the patent monopoly by purchase from an authorized seller.

We find this case to be controlled by the decision in *Boesch v. Graff,* 133 U.S. 697, 10 S.Ct. 378, 33 L.Ed. 787 (1890). There Graff, who held patents relating to lamp burners both in this country and in Germany, sued the defendant Boesch for infringement of the United States patent by selling infringing burners in the United States. Boesch defended on the ground that he had bought at least some of the burners in Germany from one Hecht before importing them into the United States. The Supreme Court acknowledged that Hecht was authorized to make and sell these burners in Germany because he had made preparations for manufacturing them before Graff applied for the patent and because the Imperial Patent Law of Germany at that time permitted persons who had already used or prepared to use an invention at the time application for a patent for that invention was made to continue to practice the patented art notwithstanding the granting of the patent.[1] Boesch contended that Hecht's authorization freed the burners manufactured by him from the patent monopoly and that he therefore purchased them free of that monopoly. The Court deemed Hecht's authorization under German law immaterial and concluded that the right granted him thereunder could not authorize "purchasers from him . . . to sell the articles in the United States in defiance of the rights of patentees under a United States patent." *Id.* at 703, 10 S.Ct. at 380.

Defendant seeks to distinguish *Boesch* by limiting the scope of its authority to its precise facts, *i. e.,* Hecht's permission to manufacture as a pre-patent application producer, which status does not exist under the United States patent laws. The defendant concedes that the Supreme Court's decision was correct in deciding against one whose right did not come from a patentee, as it must in this country, but it asserts that the *Boesch* rationale does not extend to this case because it obtained its authority to

---

1. American patent law did not and does not recognize any such limitation upon the exclusivity of patent rights.

practice the patented art from Carminati, who was a licensee under the Italian patent.

This distinction between the ways in which Hecht and Carminati became authorized to practice the patent art is untenable under the *Boesch* opinion because the Court considered the question before it to be:

". . . whether a dealer residing in the United States can purchase in another country articles patented there, from a person authorized to sell them, and import them to and sell them in the United States, without the license or consent of the owners of the United States patent."

*Id.* at 702, 10 S.Ct. at 380. The source of the alleged infringer's authorization under foreign law thus was without significance in the Court's reasoning. Accordingly, the Second Circuit concluded in a somewhat more recent case that a "sale by a German patentee of a patented article may take it out of the monopoly of the German patent" but could not protect the defendant from an allegation of infringement by use in the United States. *Daimler Manufacturing Co. v. Conklin,* 170 F. 70, 72 (2d Cir. 1909), *cert. denied,* 216 U.S. 621, 30 S.Ct. 575, 54 L.Ed. 641 (1910).

The second string to defendant's bow in this motion is that the "special facts" of this case take it out of the general rule of *Boesch.* The heart of this argument is that the plaintiff owned concurrent United States and Italian patents and had entered into analogous licensing agreements concerning the same inventions, and that holding the sale and use of the three imported composting machines at issue to infringe the United States patents in this case would give plaintiff a windfall "double recovery." We will assume *arguendo* that Griffin has a right to a royalty from Carminati under the Italian licensing agreement as a result of Carminati's sales to defendant in Italy and that if we ultimately find for plaintiff he will be entitled to damages approximating royalties under the United States patents for the same machines, pursuant to 35 U.S.C. § 284.

We are not persuaded by the defendant's logic, however, and we find no authority supporting the position, that the identity of the plaintiff as the patentee in both the United States and Italy justifies a departure from the *Boesch* rule.

■ The "double recovery" theory advanced by the defendant fails principally in that it misconceives the underlying theory of patent infringement under the United States patent laws. The conceptual basis of that system is that the patentee has a certain bundle of rights—*i. e.,* to exclude others from making, using or selling the patented invention, and to control at the first stage the exceptions to that exclusion by the granting of licenses. Infringement of that right "is essentially a tort" against the patentee and "implies invasion of some right of the patentee" under the patent. *Carbice Corp. of America v. American Patents Development Corp.,* 283 U.S. 27, 33, 51 S.Ct. 334, 336, 75 L.Ed. 819 (1931). *See also Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1141 (7th Cir. 1975); *Amburn v. Harold Forster Industries, Inc.,* 423 F.Supp. 1302, 1303 (E.D.Mich.1976); 7 *Deller's Walker on Patents* § 510, at 170 (1972). If the defendant has in fact used and sold in this country machines covered by valid United States patents owned by the plaintiff, it has invaded these rights of the plaintiff.

■ The plaintiff's action is premised in the final analysis not on wrongs done to three composting machines covered by United States patents but rather on invasions of his rights under those patents. These machines were the mere instruments of that alleged tortious activity. The sale or use of each machine in both countries represents potentially two separate torts against the plaintiff and infringes potentially on two separate sets of rights held by him (assuming the conceptual underpinnings of the Italian patent law to conform to those of our own). The non-tortiousness of defendant's conduct in Italy cannot enter into an adjudication of the plaintiff's rights in this country. That the plaintiff has been or can be compensated by Carminati, thereby making the sale and defendant's acts in Italy non-tortious, therefore cannot compro-

mise his discrete right to exclusive practice of the patented art in the United States.

The defendant further argues that judgment for the plaintiff would unjustly enrich him by allowing recovery of two royalties, but this argument miscasts the analogy. If the plaintiff had arranged for ownership of the Italian and American patents to be vested in two different persons (most conveniently, by setting up a corporation in each nation to own the patents granted under that country's laws), the facts here presumably would create a right under *Boesch* and *Daimler Manufacturing Co. v. Conklin* to two different royalties—one due the Italian patentee from Carminati, the other owing to the American patentee from the defendant for use and/or sale here. Defendant's second theory apparently would create no exception to this doctrine under those facts. We fail to perceive why the plaintiff's ownership of both bundles of rights should compromise those rights, nor do we see why this fact should award a windfall, the avoidance of liability for infringement in the United States, to defendant.

Furthermore, there is nothing in the defendant's argument which would undercut the basic thrust of the *Boesch* decision, *i. e.,* that the "sale of articles in the United States under a United States patent cannot be controlled by foreign laws," 133 U.S. at 703, 10 S.Ct. at 380. The Court itself has recently reaffirmed and in fact broadened this doctrine in *Deepsouth Packing Co., Inc. v. Laitram Corp.,* 406 U.S. 518, 531, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972), where it stated that a foreign patent system can have no effect in American markets generally. *See also John Mohr & Sons v. Vacudyne Corp.,* 354 F.Supp. 1113, 1116 (N.D.Ill.1973), *citing Boesch v. Graff* ; 69 *C.J.S. Patents* § 288 at 849 (1951); P. Rosenberg, *Patent Law Fundamentals* 318 (1975). This doctrine is the logical and perhaps inescapable corollary of the rule enunciated in *Brown v. Duchesne,* 60 U.S. 183, 15 L.Ed. 595 (1856), that the operation of the United States patent laws is as a general matter limited by this nation's boundaries. *See Deepsouth Packing Co., Inc. v. Laitram Corp.,* 406 U.S. at 531,

92 S.Ct. 1700. Obviously, the consequence of granting defendant's motion would be to allow rights conferred by an Italian patentholder (the plaintiff) on his licensee (Carminati) and compensation for those rights to affect the rights of the American patentholder (again, the plaintiff) in derogation, however indirect, of this doctrine. It may be that the limited nature of the effect that would be given Italian patent law, *i. e.,* as a legitimate source of rights and compensation rendering plaintiff's infringement case an attempt at a double recovery, brings it outside the rationale for the broadly stated rule of "no extraterritorial effect." The defendant has not so argued, however; and its claim that it is not attempting to attribute extraterritorial effect to the plaintiff's Italian patents, Reply Brief at 4, is erroneous.

Finally, we believe that endorsing defendant's theory that importation of an otherwise infringing article from a country where its sale is authorized immunizes under these narrow circumstances its usage and sale in the United States would invite certain practical problems. First, defendant's argument that purchase from Carminati authorizes use and sale in the United States seems to assert, through use of the terminology "concurrent patents", that the plaintiff's rights and the scope of the patented art are the same under the Italian patent laws as under our own. But we do not know whether these similarities in fact exist. For us to hold that the United States patent monopoly was destroyed because Carminati took free of the Italian patent monopoly, we believe we would have to determine under defendant's theory that those monopolies were virtually identical or, at least, very similar. Even if we were to accept conceptually that unjust enrichment defense, accordingly, we would have to make some inquiry into exactly what the plaintiff had under the Italian patent. The Supreme Court in *Boesch* avoided an inquiry into the legal significance of differences between American and German patent laws by framing the question before it broadly, in terms of persons "authorized"

under German law. 133 U.S. at 702, 10 S.Ct. 378. We consider it unwise to involve ourselves in the niceties of Italian patent law, and the difficulties inherent in determining those facts and comparing the plaintiff's foreign and American patent rights underscore the untenability of defendant's theory.[2]

In addition, as plaintiff contended at oral argument, recognition of this theory could encroach as a practical matter upon the protections afforded the patentee by the American patent system, in that a person who was arranged to patent the same invention in this and a foreign country would lose the protection of the United States patent over goods imported from that nation. The defendant exhorts us to create a narrow exception to the rule in *Boesch* in order to avoid an undue hardship on it. To the extent any hardship is worked on the defendant here, it is of its own making in conducting itself so as possibly to affront patent rights in two countries. Consequently, we are more concerned with the potential practical effects of undercutting the United States patent system than with those of subjecting importers of patented articles to bearing the costs imposed by valid patent monopolies in two countries.

For the reasons stated above we will deny the defendant's motion for summary judgment.

---

2. Similarly, if we are to accept the defendant's theory that it would be inequitable to allow Griffin to collect two royalties, we believe we would have to compare his licensing agreements in Italy and the United States in order to determine whether the royalty from the Italian sale was adequate to make equitable the loss of the American royalty. Such inquiry would be impossible on this record since we do not know the compensation plaintiff is entitled to under his United States licensing agreement. We are uncertain, furthermore, by what standards the "adequacy" of that compensation would be reckoned. Again, the problematic nature of a judicial evaluation of the adequacy of foreign royalties militates against carving out the narrow exception to the *Boesch* rule, advanced by the defendant, for cases of "doubly-recovering" patentees.