**STANDARD REGISTER CO. v. AMERICAN SALES BOOK CO., Inc.**

No. 264.

Circuit Court of Appeals, Second Circuit.

April 6, 1945.

Bean, Brooks, Buckley & Bean, of Buffalo, N. Y. (Samuel E. Darby, Jr., of New York City, Marston Allen, of Cincinnati, Ohio, and Edwin T. Bean, of Buffalo, N. Y., of counsel), for plaintiff-appellant.

Franchot, Runals, Cohen Taylor & Rickert, of Niagara Falls, N. Y. (Stephen H. Philbin and William J. Barnes, both of New York City, of counsel), for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff, Standard Register Company, brought three suits against the defendant, American Sales Book Co., Inc., for infringement of patents owned by the former. The answer in each suit presented a defense of "unclean hands" alleging that the plaintiff had so misused its patents as to bar their enforcement in the suit. The suits were consolidated by the court and were dismissed, after trial, with prejudice on the ground that the plaintiff had

misused its patents to aid its business in unpatented articles.

The court disposed of the case solely upon the terms of the license by the plaintiff under patents that it owned. The business of the plaintiff "is primarily the sale of marginally punched business forms". The forms are continuous strips of paper, such as invoices, bills of lading, checks or vouchers, usually consisting of an original and several copies, upon which typewriters, billing machines, tabulating machines, and the like, type words or numbers. Mechanical feeding devices have been designed, which are used in connection with the typewriters and other business machines to feed the forms through them and also to keep the forms properly aligned. The plaintiff's feeding mechanism is a device having two pin-wheels, with pins which enter previously punched holes in each longitudinal margin of the forms to feed and align them. These machines are claimed to be covered by numerous patents which the plaintiff owns, for infringement of eight of which it brought the suits for infringement which are involved in the present appeal. It is these patents which the trial court found were misused by the plaintiff because it furnished its feeding materials to purchasers of its paper under license or loan agreements reading as follows:

"License

"No......

"The Standard Register Company, of Dayton, Ohio, later referred to as 'Owner', in order to facilitate the use of marginally punched manifolding material purchased from it by.............................. later referred to as 'User', in office mechanical devices, does hereby loan to and license said User to use the property described on the reverse side hereof in Schedule Two, which said property is patented under one or more United States and Canadian Letters Patent listed on the reverse side hereof in Schedule One.

*    *    *    *    *

"This License shall continue only so long as the User purchases from the Owner or its authorized representatives, at the prevailing quotations made from time to time by Owner to others in similar position as User, marginally punched stationery or continuous form material for use on the devices licensed hereby in lots totalling minimum gross price of Fifty ($50.00) Dollars per order, and not less than Fifty

($50.00) Dollars per year for each feeding device licensed hereunder and only so long as no continuous form material or marginally punched forms obtained elsewhere than from Owner and/or its authorized representatives is used by User with the licensed property. But nothing herein shall be deemed to restrict the User in the purchase of continuous manifolding form material from others than Owner, or to limit the User in the purchase, lease or license of feed aligning devices of others excepting that no license is to be implied hereby under the patents referred to in Schedule One as to such products of others.

"The User may terminate this license agreement at any time upon ten days written notice, addressed to the Owner at Dayton, Ohio, but such termination shall not take effect until receipt by the Owner at Dayton, Ohio of the licensed property."

The parties stipulated that feeding machines are not supplied to the plaintiff's customers unless agreements substantially similar in terms to the above are signed by the customers; that since 1936 the plaintiff has sold to its platen using customers marginally punched unpatented paper forms for use thereon, in excess of $1,000,000 per year. The trial judge made the following findings:

"3. The plaintiff and the defendant supply different feeding devices to cooperate with the margin feed holes to propel the paper through the machine and secure the right alignment. Plaintiff's feeding device is a platen attachable to a typewriter, or other above-stated machines, with a series of retractible pins at each end for engaging the marginal holes along the edges of the forms. This platen fits into a typewriter, tabulator or other type of similar machine in place of a roller. The patents in suit relate to this platen, and it is referred to as a 'registrator platen.'

"The feeding device of the defendant is in the nature of an attachment which is added to the machine without disturbing the platen already in the machine, and defendant's attachment is usable on the same machine as the plaintiff's device by the adjustment of plaintiff's registrator platen so that its pins are inoperative at the feeding position.

"4. The plaintiff's platen was designed to meet the specific physical characteristics of the plaintiff's stationery, and it does not appear that the stationery of any other com-

pany has been used or attempted to be used in plaintiff's device. It is apparent that it is physically possible for any one to copy the form stationery of the plaintiff and use plaintiff's platen without alteration."

It was admitted by plaintiff's counsel that forms made by others than the plaintiff could be used without harm to its licensed feeding machine at least if such forms were substantially identical with those of the plaintiff. This, we think, justifies the legal conclusion of the District Judge that the "plaintiff has misused its patents in suit, to aid its business in unpatented articles."

The patent license will continue only so long as the licensee (1) purchases from plaintiff not less than fifty dollars worth of the paper forms for each platen, (2) does not use with the platen, paper forms purchased from others.

We feel no doubt that under such a licensing system the plaintiff is using its patent to restrain its licensees from buying unpatented paper from others and that the suits for infringement were properly dismissed for misuse of the patents.

In Morton Salt Co. v. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 404, 86 L.Ed. 363, a corporation, which was engaged in the business of selling salt tablets to the canning trade through a wholly-owned subsidiary, owned a patent on a machine for depositing such tablets in the process of canning and made a practice of licensing canners to use its machine, only upon condition that the tablets used with them be bought from the subsidiary. The Supreme Court held that under such circumstances a suit brought by the patentee for infringement of its patent should be dismissed. In an opinion by the Chief Justice, the court said:

"* * * The question we must decide is not necessarily whether respondent has violated the Clayton Act, but whether a court of equity will lend its aid to protect the patent monopoly when respondent is using it as the effective means of restraining competition with its sale of an unpatented article.

"* * * Where the patent is used as a means of restraining competition with the patentee's sale of an unpatented product, the successful prosecution of an infringement suit even against one who is not a competitor in such sale is a powerful aid to the maintenance of the attempted monopoly of the unpatented article, and is thus a contributing factor in thwarting the public policy underlying the grant of the patent. * * * Equity may rightly withhold its assistance from such a use of the patent by declining to entertain a suit for infringement, and should do so at least until it is made to appear that the improper practice has been abandoned and that the consequences of the misuse of the patent have been dissipated. * * *"

See to the same effect B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367; Philad Co. v. Lechler Laboratories, 2 Cir., 107 F.2d 747.

We can discover no basis for distinguishing the above authorities, which are based upon principles laid down in various earlier decisions in the Supreme Court, particularly in Carbice Corporation v. American Patents Corporation, 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819. Plaintiff's counsel argues that the facts in the authorities we have referred to differ from those in the case at bar because here the patent owner is only utilizing his patents "to aid his business in the sale of unpatented supplies". Doubtless this is true of every patentee who licenses his patents only for use in connection with his own goods but that throws no light on the proper disposition of the case before us. The contention that the patentee is not using his patent to force the lessee to use his paper is met by the fact that the lessee cannot obtain the use of the platen unless he uses plaintiff's paper and plaintiff's paper only with that platen.

The appeal might well have been decided upon the opinion of Judge Knight for we have substantially reiterated his reasons. We have indeed only rendered this opinion because of the earnestness of the argument of appellant's counsel.

Judgment affirmed.