**AERATION PROCESSES, Inc. v. WALTER KIDDE & CO., Inc. et al.**

**Civ. A. No. 2890.**

District Court, W. D. New York.

Oct. 21, 1947.

See, also, 77 F.Supp. 647.

Toulmin & Toulmin of Dayton, Ohio (H. A. Toulmin, Jr., of Dayton, Ohio, Hugh M. Bennett, of Columbus, Ohio, John S. Powers, of Buffalo, N. Y., and Clayton E. Crafts, of Dayton, Ohio, of counsel), for plaintiff.

Darby & Darby of New York City (Samuel E. Darby, Jr., of New York City, Edwin T. Bean and Bean, Brooks, Buckley & Bean, all of Buffalo, N. Y., Floyd H. Crews, of New York City, and J. William Carson, of Belleville, N. J., of counsel), for defendant.

KNIGHT, District Judge.

The Amended Complaint alleges the infringement of two patents, to wit: No. 2,281,604, issued May 5, 1942, to A. H. Smith; and No. 2,294,172, issued August 25, 1942,

to Charles Getz. The defendant Kidde Manufacturing Co., Inc., answering, denies infringement and alleges the invalidity of the two patents. At the opening of the trial, the so-called mechanical patent, No. 2,281,604, was withdrawn from the suit.

The trial proceeded as if limited to the issues of the validity and infringement of this process patent and to those raised by this moving defendant's counterclaim. Towards the close of the trial it was brought out that plaintiff has, in recent years, sold its nitrous oxide cartridges to its various "points". Each of these is a separate corporation, operating under a license agreement with plaintiff, which was reduced to a standard form in November, 1946.

This defendant's counsel insisted on the production of a copy of this form license agreement. After it was produced, it was received in evidence as Defendants' Exhibit F, over objection of plaintiff's counsel that it had no bearing upon this suit. This defendant's counsel, however, asserted: "It involves a question of law, and I intend to make application to the Court at the proper time to amend my answer in behalf of the Kidde Manufacturing Company to plead the improper use of patents, in violation of Section 3 of the Clayton Act, as well as coming under the improper use doctrine. This is our first information obtained during the trial. * * * I have offered it for the purpose for which it came up by plaintiff's own proof but * * * I will make application to amend my pleadings to set up the additional defense, the only evidence bearing on which will be this agreement plus the testimony of Dr. Jones."

At the close of the trial, this defendant's counsel made an oral motion to amend its answer. We quote from the stenographic record, on which he relies in his brief:

"Mr. Darby: My motion to amend, is this, to plead improper use of the patent in suit as well as other patents involved, whereby the plaintiff is barred from the enforcement of its patent in this cause, by virtue of the manner in which it has granted licenses thereunder, and the terms and the conditions of the licenses as set forth and elucidated by the witness Jones, and by the contract.

"The Court: You said 'other patents'. What do you mean?

"Mr. Darby: The contract specifies a number of other patents as well, but, of course, in this case all I am concerned with in this defense is the patent in suit.

"The Court: I think we should be liberal about these things, don't you think so, Mr. Toulmin?

"Mr. Toulmin: Yes, your Honor, I am objecting officially. As a practical matter I take it your Honor is going to allow the amendment?

"The Court: I think so.

\* \* \* \* \* \*

"The Court: Do you want to make a formal motion?

"Mr. Toulmin: I think Mr. Darby ought to put this thing in writing and have a formal motion.

"Mr. Darby: I will * * *."

This defendant then moved to amend its answer and counterclaim by adding the following paragraph: "8(a). That the patents in suit, as well as other patents owned by plaintiff, have been improperly used by plaintiff to derive its profit not from its patents, but from unpatented supplies with which they are used; wherefore, plaintiff is barred from the enforcement of its patents."

This defendant's counsel, in their brief, state:

"The evidence adduced during the testimony of plaintiff's witness Jones * * *, and the standard license agreement (Exhibit F), constitute the evidence on this defense. This testimony and this exhibit show—

"(1) That the 'points' have been required to buy unpatented containers and supplies from the plaintiff, and

"(2) The points have been prohibited from dealing in the goods of defendant Kidde Manufacturing Co., Inc., and others."

The proposed amendment does not allege any violation of the Sherman or Clayton Acts, 15 U.S.C.A. § 1 et seq. It does not allege any monopoly. It rests on "improper use."

The amendment of pleadings is governed by Rule 15 of Rules of Civil Pro-

cedure, 28 U.S.C.A. following section 723c. Subdivision (a) provides for amendment as a matter of course. If this cannot be done, it is further provided: "Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Plaintiff's counsel have given no written consent and, in their two briefs, strenuously object to this amendment.

In support of the motion to amend, counsel for this defendant urge that the license agreement in question constitutes a clear violation of section 3 of the Clayton Act, 15 U.S.C.A. § 14, as well as sections 1, 2, and 3 of the Sherman Act, 15 U.S.C.A. §§ 1-3.

This section expressly applies to things "whether patented or unpatented." It has nothing to do with the patent law itself. The next section (4) of the Clayton Act, 15 U.S.C.A. § 15, provides for suits by persons injured, as follows: "Any person who shall be injured in his business or property by reason of anything forbidden in the anti-trust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Section 15 of the Act, 15 U.S.C.A. § 25, provides for suits by district attorneys of the United States, in their respective districts, to restrain violations of the Act, including violations of section 3.

Sections 1, 2 and 3 of the Sherman Act, 15 U.S.C.A. §§ 1, 2, 3, relate to monopolies and do not expressly mention patents.

There are cases, however, where courts have considered these Acts in patent infringement suits. Radio Corp. of America v. Majestic Distributors, D. C., 53 F.2d 641; Nat'l Electric Products Corp. v. Circle Flexible Conduit Co., Inc., D. C., 57 F.2d 219; M. Witmark & Sons v. Pastime Amusement Co., D. C., 298 F. 470, affirmed; 4 Cir., 2 F.2d 1020; Geddes v. Anaconda Mining Co., 254 U.S. 590, 41 S. Ct. 209, 65 L.Ed. 425; Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct.

402, 86 L.Ed. 363; B. B. Chemical Co. v. Ellis, 314 U.S. 495, 62 S.Ct. 406, 86 L.Ed. 367; Hartford-Empire Co. v. United States, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322; Standard Register Co. v. American Sales Book Co., 2 Cir., 148 F.2d 612; 41 Corpus Juris, 185.

Patent No. 2,294,172 covers "Improvement in Processes of Making Aerated Food Products." Among the 7 claims of this patent are these:

"3. The process of producing an aerated product which consists in causing an edible fat-containing liquid to absorb nitrous oxide under pressure and suddenly releasing the pressure so as to yield a highly aerated foamy product * * *.

"7. The process of producing an aerated food product which consists in causing an edible fat-containing liquid to absorb under pressure a gas of the class consisting of nitrous oxide, dimethyl oxide and difluordichlormethane, and thereafter releasing the pressure and simultaneously therewith forming a highly aerated foamy product."

"The distinction between product and process patents is clear and is quite generally understood. The product patent is upon an invented or discovered article; the process patent is upon a method of making an article." In re Amtorg Trading Corp., 75 F.2d 826, 832, 22 C.C.P.A., Customs, 558. "A patentable process is a method of treatment of certain materials to produce a particular result or product." Holland Furniture Co. v. Perkins Glue Co., 277 U.S. 245, 255, 48 S.Ct. 474, 478, 72 L. Ed. 868.

We must now consider the evidence on which this moving defendant relies in support of its motion to amend, to wit, the testimony of plaintiff's witness Jones and the standard license agreement (Defendants' Exhibit F).

The six "whereas" clauses in the agreement declare, in part, that Aeration has consented to the use of "Aerated Products" as a part of the corporate name of the Point; that it is the owner of the trade mark "Instantwhip" and the Point desires to obtain the right to use said trade mark and to have the exclusive right in the de-

signated territory to distribute said product under said trade mark; that the Point desires to obtain the optional use of necessary Aeration machines for processing the product and of Aeration containers for selling the same; that the Point desires to obtain the benefit of the experience of Aeration; that Aeration grants "the exclusive right to use said trade mark Instantwhip and sell said product only in the following territory * * * including the right of the Point to process said product under patents Nos. 2,294,172 * * * and patents hereafter applied for and secured * * * and the optional use of Aeration machinery and containers manufactured by Aeration under patents Nos. 2,212,379 and 2,281,604 * * * and patents hereafter applied for and secured * * * it being understood and agreed that the right to process or manufacture any product similar to or in competition with Instantwhip is not hereby granted * * *.

"2. * * * the Point agrees to engage exclusively in the processing, distribution and sale of said product * * *.

"8. The Point expressly agrees to follow the formulae and directions furnished by Aeration without variation unless permitted in writing by Aeration."

As to the use of containers, the agreement contains these provisions: "5. * * * The Point agrees to process and market the product covered in this agreement either in containers owned by Aeration, which shall be used for no other purpose or product, or in containers capable of processing and dispensing Instantwhip at the same heretofore established standard of quality and quantity as that dispensed by Aeration containers when properly processed * * *."

John E. Jones, plaintiff's vice-president and secretary, testified that each "point" is a separate corporation, operating under a license agreement; that in November, 1946, all of the outstanding license agreements were changed to conform to the standard form (Defendants' Exhibit F). He further said on cross-examination by this defendant's counsel:

"Q. Do you recall the general substance of the agreements that were outstanding? A. Pretty much along the line of what appears in that agreement there (Defendants' Exhibit F) * * *.

"Q. Up until November, 1946, from whom did the licensees acquire the equipment in cans? A. They acquired them through our company, but they are not required to purchase containers, equipment, or any supplies through our company. They have the opportunity of purchasing wherever they can do so to the best of their advantage. They continue to buy from us because they find they can do so to better advantage than they can from any other concern, but they are not required to do so under the agreement.

"Q. We both are referring to the cans, such as Exhibit 35 I am holding in my hand? A. That is correct.

"Q. As I understand it, the licensees, the points up to November of 1946 acquired all of their cans from your company, is that right? A. That is right.

"Q. They have continued to do so since that time? A. So far as I know.

"Q. Do you happen to recall whether or not—I notice in the agreement I hold in my hand, the one finally revised in 1946, you make it optional * * *. A. That is correct.

"Q. * * * on the licensee or point to acquire the cans from you? A. That is right, we don't wish to restrict them.

"Q. That is one of the respects in which the agreement was revised in 1946, was it not? A. As I recall in the agreement prior to this, they always had the option to purchase their cans from any source that they could do to the best advantage, provided the container met with our approval. That provision was withdrawn in the latest revision.

"Q. If I correctly understand it, prior to November, 1946, the licensee had the option of acquiring its cans such as Plaintiff's Exhibit 35 from any source that it pleased? A. That is right.

"Q. And also as I understand it up to November, 1946, your company never had the occasion to approve any can other than your own? A. The request was never made to us. I think the facts of the matter are, they never were able to acquire such

equipment to the same advantage that they could if it were purchased from us."

Witness Jones further testified:

"Q. One more question in connection with the license agreement. Under the present agreement as finally revised November, 1946, as well as in the prior agreements, the licensees were required to make a deposit of money with your company, the parent company, against which the cost of the cans and other equipment was to be charged, isn't that a fact? A. That is right.

"Q. That is still the practice to do? A. That is right."

■ Plaintiff is the owner of a process patent for making aerated products. The validity of the patent is not at issue on this motion to amend the answer and counterclaim of Kidde Manufacturing Co., Inc. If the patent is valid, plaintiff has the right to license its use. The aerated product, when distributed by the licensed "points", had to be put in containers. There is no evidence that any of the "points" were required to use plaintiff's unpatented containers. On the contrary, the standard license agreement makes such use optional. The testimony of witness Jones shows there was no pressure exerted by plaintiff upon any of the licensed "points" to use only plaintiff's containers or restrain the "points" from using containers of competitors if suitable.

The defense now sought to be interposed was not an issue at the trial and would not conform to the evidence, to wit, Defendant's Exhibit F and the testimony of witness Jones.

Each of the cases cited by moving defendant's counsel discloses a different state of facts. Vide:

United Shoe Machinery Corp. v. United States, 258 U.S. 451, at page 454, 42 S.Ct. 363, 364, 66 L.Ed. 708, was an action brought by the United States, under the Clayton Act, to enjoin defendants "from making leases containing certain clauses, terms and conditions alleged to be violative of the act." The decree of the District Court enjoining the use of certain restrictive clauses was affirmed. The court said: "When it is considered that the United Company occupies a dominating position in supplying shoe machinery of the classes involved, these covenants, signed by the lessee and binding upon him, effectually prevent him from acquiring the machinery of a competitor of the lessor, except at the risk of forfeiting the right to use the machines furnished by the United Company, which may be absolutely essential to the prosecution and success of his business. * * * The fact that the lessor in many instances forebore to enforce these provisions does not make them any less agreements within the condemnation of the Clayton Act." 258 U.S. at pages 457, 458, 47 S.Ct. at page 365, 66 L.Ed. 708.

International Business Machines Corp. v. United States, 298 U.S. 131, at page 132, 56 S.Ct. 701, 702, 80 L.Ed. 1085, was also an action brought by the United States to enjoin an alleged violation of Section 3 of the Clayton Act consisting in the leasing by defendant of "its tabulating and other machines upon the condition that the lessees shall use with such machines only tabulating cards manufactured by (it)." The court, affirming the injunction of the District Court, said: "It is true that the condition is not in so many words against the use of the cards of a competitor, but is affirmative in form, that the lessee shall use only appellant's cards in the leased machines. But as the lessee can make no use of the cards except with the leased machines, and the specified use of appellant's cards precludes the use of the cards of any competitor, the condition operates in the manner forbidden by the statute." 298 U.S. at page 135, 56 S.Ct. at page 703, 80 L.Ed. 1085.

Standard Register Co. v. American Sales Book Co., 2 Cir., 148 F.2d 612, was a patent infringement suit. Judgment of this court dismissing the complaints was affirmed. The license agreement is set forth in the opinion and it is thus summarized: "The patent license will continue only so long as the licensee (1) purchases from plaintiff not less than fifty dollars worth of the paper forms for each platen, (2) does not use with the platen, paper forms purchased from others." 148 F.2d at page 614.

■ The view of this Court as expressed on the trial on the motion to amend is changed after further consideration of the

evidence and examination of the applicable law. Attention must, however, be called to the fact that the proposed amendment is not in accord with the limitations prescribed on its introduction. It alleges improper use of "the patents in suit as well as other patents," and derivation of profits from "unpatented supplies." The evidence shows a single patent involved in the suit, supplies used by the plaintiff were patented and plaintiff derived no profits from this patent.

For the reasons herein stated at length, the motion of defendant Kidde Manufacturing Co., Inc., to amend its answer and counterclaim is denied.