SURGITUBE PRODUCTS CORPORA-
TION and Louis Hochman,
Plaintiffs,

v.

SCHOLL MANUFACTURING CO., Inc.,
Defendant.

United States District Court
S. D. New York.
Jan. 24, 1958.

Pennie, Edmonds, Morton, Barrows & Taylor, New York City, for plaintiffs, Stanton T. Lawrence, Rutherford, N. J., of counsel.

Stephen G. Cox, Westfield, N. J., for defendant, Stephen H. Philbin, New York City, of counsel.

DAWSON, District Judge.

This action tried by the Court without a jury is one for alleged patent infringement. Plaintiff is the assignee of a bandage patent and claims that defendant is liable to it under 35 U.S.C. § 271(b) and (c) as a contributory infringer of its patent and as having actively induced the infringement of its patent. Defendant has raised four defenses, (1) invalidity of the patent, (2) non-infringement, (3) patent misuse, and (4) laches. The patent involved is Patent No. 2,326,997 for a "bandage."

The Court finds the following facts:

1. Plaintiff Surgitube Products Corporation is a New York Corporation, and plaintiff Louis Hochman is its president. Defendant Scholl Manufacturing Co., Inc., is a New York Corporation. This action arises under the Patent Laws of the United States and this Court has jurisdiction of the action.

2. On August 17, 1943, the United States Patent Office issued to Louis Hochman the patent in suit. He subsequently executed an exclusive license to the plaintiff corporation to make, use and vend the product covered by the patent.

3. The patent is a product patent. All the claims are for a "bandage" and Claim 1 is representative of all of the claims. This claim is for

"A bandage produced from an open-ended tubular fabric structure twisted intermediate its ends and one portion being returned over the remaining portion to provide a tubular covering open at one end and closed at the other end."

The patent in its specifications states, among other things:

"It is to be understood that within the invention various surgical fabrics may be used to produce the bandage. These fabrics may be gauze, knitted of plain or ribbed stitch, and netted fabrics."

It was agreed at the trial that the patent is on the bandage and not on the fabric of which a bandage might be made, and that the fabric itself is not patented.

Essentially the patent is on a complete bandage made of a tubular fabric, which bandage is formed when the tubular fabric is stretched over the part of the body to be bandaged and is then twisted at one end and returned, so that in effect there are two or more layers of bandage over the injured part.

4. Plaintiff corporation manufactures tubular fabrics and sells them under the trade-mark "Surgitube". It advertises how the fabric can be used when applied to an injured part so as to form a bandage which would, when placed over the injured part, form the bandage described in the patent. With the boxes of this fabric material plaintiff encloses an "applicator" which is a device over which the tubular fabric is first stretched and then put over the injured part so as to make it easier to apply the tubular fabric to the injured part. The applicator apparently is not patented in the United States nor is the use of such applicator patented. No claim of patent infringement with reference to the applicator or its use has been made in this litigation.

5. On April 1, 1943, an agreement was entered into between the plaintiff corporation and the defendant by which the plaintiff granted defendant exclusive sales rights, in the United States and its possessions, to "all Surgitube fabrics" and for the use of the same as covered by the patent application which was then pending. The defendant purchased from the plaintiff certain stocks of tubular fabrics which it then sold to the trade as bandage material. In the course of its selling efforts defendant gave demonstrations to customers—such as doctors and nurses—and prospective customers to indicate the manner in which the tubular fabric could be used to make a double-ply bandage of the type described in the patent. In about August 1944 defendant cancelled this contract and then embarked on its own upon the sale of tubular bandage fabric, together with applicators. This tubular fabric was similar to that sold by Surgitube but with applicators of a somewhat different type. Defendant in its sales efforts for its own

fabric and applicators gave demonstrations as to how the fabric could be used for bandaging, in certain cases suggesting the twisting and retroverting described in the patent so as to provide a bandage open at one end and closed at the other, and with two or more layers covering the injured part. Whether defendant's conduct in first acting as a representative for plaintiff's product and then cancelling the contract and selling a similar product under its own name was proper or improper, and whether it constituted an appropriation of plaintiff's idea and business, is not before the Court, since plaintiff has specifically stated that it is not asserting unfair competition but is content to rest on the validity of its patent.

We start here with the admitted fact that a tubular fabric is not new and is not patented, and that neither is it new or patentable merely to produce a bandage made out of a tubular fabric. This point is not disputed by plaintiff. However, plaintiff seeks to use the patent (which is a patent on a completed bandage made by twisting and retroverting a tubular fabric) to restrain the sale of tubular bandage gauze. Plaintiff asserts that a seller of tubular gauze knows that it is to be used in an infringing manner, i. e., by twisting and retroverting, and that therefore a seller of such tubular gauze is a contributory infringer.[1]

Fundamentally, however, we must consider whether the patent itself is valid. The use of flat fabrics for making bandages has been known for thousands of years. The use of a tubular fabric which may be placed over an injured finger or other part of the body may be a more recent development but this is solely because the processes for making fabric in a tubular rather than a flat form is a more recent development. However, plaintiff concedes that merely using a tubular fabric for making bandages is not the invention covered by the patent.[2]

The claims of the patent all show that an essential part of the claimed invention is a "fabric twisted intermediate its ends and one portion being returned over the remaining portion" so as to provide a covering open at one end and closed at the other.

Therefore, the question is whether twisting a tubular fabric and turning it back on itself so as to make a bandage of more than one layer constitutes invention. An invention to be patentable requires more ingenuity than the work of a mechanic skilled in the art." Hotchkiss v. Greenwood, 1850, 11 How. 248, 267, 13 L.Ed. 683; Lyon v. Bausch & Lomb Optical Co., 2 Cir., 1955, 224 F.2d 530, 538. No patent may be obtained for an idea which would be obvious to a person having ordinary skill in the art. 35 U.S.C. § 103. The only

---

1. "The Court: The only thing you say is new, then, is the twist and the retroverting?

"Mr. Lawrence: Yes, your Honor. We also say that the invention that was made here, the invention of the patent in suit, is the thing that developed this entire tubular gauze art, if you will, which was the infringing thing.

"The Court: That is something I don't understand at all, because your patent is not on the use of tubular gauze for bandages. It is restricted to a tubular gauze which has a twist and is retrograded [retroverted]?

"Mr. Lawrence: That is correct.

"The Court: Therefore, tubular gauze could be sold for bandages by anybody unless they recommended that twist and retrograding [retroverting]? I suppose you will concede that, won't you?

"Mr. Lawrence: Unless they knew it was going to be used in an infringing manner."

2. This patent was first rejected by the Examiner in the Patent Office. In a communication to the Commissioner of Patents, seeking reconsideration, dated November 17, 1941, which is in the file wrapper, the applicant for the patent stated:

"The Examiner holds that applicant's actual device is an open-ended tubular fabric to be used as a bandage, but this is not true. Applicant's invention is a bandage made from certain material, namely, a seamless, open-ended tube, which tube is twisted and turned back on itself."

purpose in twisting the fabric and returning it on itself is to close one end of the tube and provide more than one layer of bandage. The idea of twisting a tube and doubling it back to obtain a double thickness is old and obvious; it cannot be classed as invention.

The fact that the particular type of bandaging technique used with a tubular fabric and applicator has not been generally utilized until recent years is not an indication that the invention described in the patent is new. Until fairly recently bandage material was made in flat strips which had to be wound around the injured parts. When a tubular bandage fabric was made it became obvious that it could be applied either by winding it around the injured part or slipping it over the injured part. Once the tubular fabric is slipped over the injured part it would be obvious to anybody—whether a nurse, novice or Boy Scout—that if a double layer of the tubular fabric is desired after the bandage is first applied the thing to do is to retrovert the tube so as to bring the bandage over the injured part again, and that to keep the bandage from slipping up at the end the obvious thing to do would be to give it a twist at the end before retroverting it. The twist and retroverting are obvious steps to anybody who would seek to apply a tubular bandage in more than one layer. It does not involve such novelty or invention as would justify the issuance of a patent on the bandage so formed. See 35 U.S.C. § 103; Welsh Mfg. Co. v. Sunware Products Co., 2 Cir., 1956, 236 F.2d 225.

The Court concludes that the patent is invalid for want of invention.

Since the patent is invalid there can be no infringement of the patent. However, the Court finds that there is a second ground which would warrant denying recovery to plaintiff in this suit. Defendant has contended that even if plaintiff's patent were valid that it was guilty of a misuse of the patent. The Court finds this to have been the case.

It is well established that the owner of a patent monopoly may not extend the patent monopoly to unpatented material used in practicing the invention, and that this is so whether the patent be for machine, product or process. Morton Salt Co. v. G. S. Suppiger Co., 1942, 314 U.S. 488, 492–493, 315 U.S. 788, 62 S.Ct. 402, 86 L.Ed. 363; Carbice Corp. v. American Patents Development Corp., 1931, 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819; Leitch Mfg. Co. v. Barber Co., 1938, 302 U.S. 458, 58 S.Ct. 288, 82 L.Ed. 371. It is not disputed that plaintiff sells tubular gauze in boxes of various sizes, each of which is marked:

> "Surgitube
> Trade-Mark Reg.
> U. S. Patent No. 2,326,997
> The Tubular Gauze Over-dressing"

It has been admitted that tubular gauze is not patented and most certainly it is not patented by Patent No. 2,326,997, which is the patent in suit. In and of itself, the innocent marking of an unpatented article as patented may not effect a misuse of the patent. See Dade v. Boorum & Pease Co., C.C.S.D.N.Y., 1903, 121 F. 135. However, in this case the wrongful marking has been done with knowledge that the patent did not apply to the marked article, and plaintiff has sought to create the impression, by this marking on the boxes that this patent covers the unpatented gauze. The Court finds that plaintiff has done this with intent to deceive the public and to restrain trade in unpatented tubular gauze. This use of a patent to restrain competition with the patentee's sale of an unpatented product constitutes a misuse of the patent, and warrants denial of recovery to a plaintiff in an infringement action.[3] Morton Salt Co. v. G. S. Suppiger Co., supra;

---

3. Plaintiff has presented its view in this action that the Court should enjoin the sale by defendant of unpatented tubular gauze by application of subparagraph (c) of 35 U.S.C. § 271. Plaintiff has argued that the only substantial use of the tubular fabric was for the infringement of plaintiff's alleged patent. The Court, however, finds that tubular gauze is a staple article of commerce and is suitable for substantial noninfringing use, for example, as a single layer bandage without twist and retroverting. (See plaintiff's Exhibit 11–B, which is a

Carbice Corp. v. American Patents Development Corp., supra; Mercoid Corp. v. Minneapolis-Honeywell Regulator Co., 1944, 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396; Standard Register Co. v. American Sales Book Co., Inc., 2 Cir., 1945, 148 F.2d 612; Dr. Salsbury's Laboratories v. I. D. Russell Co. Laboratories, 8 Cir., 1954, 212 F.2d 414, certiorari denied, 1954, 348 U.S. 837, 75 S.Ct. 50, 99 L.Ed. 660.

### Conclusion

The Court concludes:

1. Patent No. 2,326,997 is invalid for want of invention.

2. Plaintiff has been guilty of misuse of a patent by wrongful marking of an unpatented product with a patent notice, with intent to deceive the public and to restrain trade in unpatented tubular gauze, and as such is barred from recovery in this action.

3. A decree should be entered for the defendant, with costs, in accordance with the findings and conclusions of this opinion.

Settle decree on five days' notice.

This opinion shall constitute the findings of fact and conclusions of law of the Court.

booklet put out by the defendant entitled "New Techniques of Bandaging with Tubegauz," which shows in figures 33, 34, 35, 78, 79 and 80 the use of tubular gauze in bandaging where no twisting or retroverting is used). Resultantly, any attempts on plaintiff's part to restrain trade in unpatented tubular gauze were wrongful.