SURGITUBE PRODUCTS CORP. and
Louis Hochman, Plaintiffs-
Appellants,

v.

SCHOLL MFG. CO., Inc., Defendant-
Appellee.

No. 91, Docket 25106.

United States Court of Appeals
Second Circuit.

Argued Jan. 15, 1959.

Decided Jan. 30, 1959.

---

Stanton T. Lawrence, Jr., New York (W. Brown Morton and Pennie, Edmonds, Morton, Barrows & Taylor, New York City, on the brief), for plaintiffs-appellants.

Stephen H. Philbin, New York City (Stephen G. Cox, Westfield, N. J., on the brief), for defendant-appellee.

Before MEDINA, LUMBARD and BURGER, Circuit Judges.

LUMBARD, Circuit Judge.

The outcome of the plaintiffs' appeal from the dismissal of their suit for patent infringement turns on whether there is invention in a bandage which is made by taking an open-ended tubular fabric, placing part of it over the member to be bandaged, twisting the fabric intermediate its ends and then retroverting it over the member to make a double thickness. We agree with Judge Dawson that this was not invention, 158 F.Supp. 540, and accordingly affirm the judgment.

The facts are undisputed. In 1941 Louis Hochman, president of the plaintiff, Surgitube Products Corporation, applied for a patent on a bandage to be constructed of any tubular fabric. The patent, 2,326,997, was issued to him on August 17, 1943. On April 1, 1943, Surgitube, as exclusive licensee of Hochman, and defendant Scholl Mfg. Co., Inc. made a contract granting to Scholl the exclusive distributorship of the unpatented tubular gauzes then used for making the bandage. Scholl purchased the gauze from Surgitube for resale. In August 1944, one year after the bandage patent was issued, Scholl exercised a right to cancel the contract and made other arrangements to obtain tubular gauze so as to continue its business of selling gauze for closed-end bandaging.

In November 1948 Surgitube and Hochman sent two written notices to Scholl claiming infringement of the Hochman patent. The following month Surgitube sued Scholl in the Supreme Court of New York alleging unfair competition by reason of Scholl's selling tubular gauze similar to "gauze manufactured under the Surgitube patent by plaintiff." It is conceded that this New York state action has slumbered ever since. In December 1948 Scholl first purchased the unpatented seamless tubular gauze which since 1949 it has sold under the name "Tubegauz" and which was specially developed for use with its applicators in closed-end bandaging. It was apparently not until 1949 that both parties began selling unpatented instruments specially developed to aid in applying the bandage. In 1953 Scholl first introduced an additional unpatented instrument adapted to the application of large bandages which it called a "cage." Scholl attributes its subsequent business success to the introduction of the "cage."

This action against Scholl for contributory infringement, in which no claim of unfair competition has been made, was not actually commenced until February 1955.

Claim 1 of the patent is conceded to be typical and reads:

"A bandage produced from an open-ended tubular fabric structure twisted intermediate its ends and one portion being returned over the remaining portion to provide a tubular covering open at one end and closed at the other end."

It is conceded that any material can be used which is tubular and which can be twisted and then retroverted or folded

backwards. Since the specially made gauze and specialized instruments for use in applying and twisting the gauze to create the bandage are unpatented, the sole element for which invention is claimed is the technique of the bandage itself.

Such a double covering or bandage is not novel. Housewives have long used old stockings in this way. A covering so constructed was claimed in prior patents, as for example in connection with a scouring ball in 1927 when a patent was issued to one Kingman. Claim 2 of the Kingman patent refers to:

> "an exterior tubular cover body of knitted metallic fabric twisted together intermediate its ends with one section folded back upon itself to provide a plurality of thicknesses and at the same time close one end of the cover body thus constructed."

The district court properly rejected Hochman's claim that the mere application of this technique to bandaging involves sufficient invention to justify the issuance of a patent. 35 U.S.C. § 103 (1952); Welsh Mfg. Co. v. Sunware Products Co., 2 Cir., 1956, 236 F.2d 225; Youngs Rubber Corp. v. Allied Latex Corp., 2 Cir., 1951, 188 F.2d 945, 948.

Plaintiff's challenge to this conclusion is based primarily on the testimony of doctors and nurses that they required special instruction in the use of the bandage in order to comprehend and exploit its usefulness. But this need for instruction, like the parties' tardy commercial success, appears to have resulted from the introduction of the unpatented applicators previously referred to, and not from anything inherent in the claimed invention.

Since the lack of invention in the patent renders moot any question of laches in the commencement of the action, we need not pass on that defense. Similarly, we need not examine the alternative ground of Judge Dawson's decision below, namely, that Surgitube had improperly marked the box containing the gauze with a patent notice "with intent to deceive the public and to restrain trade in

an unpatented tubular gauze" [158 F. Supp. 543] and thus had misused the patent so as to foreclose its right to bring suit.

Judgment affirmed.