### MILLER v. ZAHARIAS et al.

Civ. A. No. 3029.

District Court, E. D. Wisconsin.

Feb. 13, 1947.

**30**

Ira M. Jones, of Milwaukee, Wis., for plaintiff.

Leo J. Kohn and David Charness, both of Milwaukee, Wis., for defendants Zaharias, Polanis and Wallace.

Joseph P. Brazy, of Milwaukee, Wis., for Janet Salomon.

Herman A. Mosher, of Milwaukee, Wis., for Jack Castronovo and Albert Salomon.

Maxon W. Polland, pro se.

DUFFY, District Judge.

Plaintiff claims infringement of U. S. Letters Patent Nos. 1,888,234 and 1,960,276 issued to and owned by him. Patent No. 1,888,234 for "method of and apparatus for applying wall finishes" was issued November 22, 1932, upon application filed November 9, 1929, and Claims 3, 4, 6, and 7 thereof are here in issue. Patent No. 1,960,276 for "apparatus for applying wall finishes" was issued May 29, 1934, on application filed August 22, 1932, and Claims 1, 2, and 5 thereof are here in issue. Claims 3, 4, 6, and 7 of Patent No. 1,888,234 are set forth in the margin.[1]

Heretofore three actions were commenced in this court by Edward J. Miller, the plaintiff herein, alleging infringement of the two patents in suit. In Civil Action No. 458 [2] where the defendants were Clay-

---

[1] Claim 3. The hereindescribed method of applying plastic material to a wall to resemble stone and the like which consists in, pressing a quantity of the plastic material onto a suitable backing by means of a member whose surface is formed to resemble the finish desired, and in covering the surface of said member with flexible material to prevent adhesion of the plastic material to the member.

Claim 4. The hereindescribed method of applying plastic material to form a wall finish which consists, in covering a tool whose surface is formed to resemble the finish desired with relatively thin flexible material, in placing a quantity of plastic material on the flexible material, in pressing the plastic material onto the wall, and leaving the flexible material on the pressed surface.

Claim 6. The hereindescribed method of applying a surface finish to represent stone or the like, which consists in pressing individual quantities of plastic material onto the surface in juxtaposition to entirely cover the surface by forcing a member having a surface formed to represent the finish desired and covered with the plastic material, against the surface with a single motion substantially perpendicular to the surface.

Claim 7. The hereindescribed method of applying a surface finish to represent stone or the like, which consists in pressing individual quantities of plastic material onto the surface in juxtaposition to entirely cover the surface by means of a member whose surface is formed to represent the finish desired and in simultaneously applying a covering to the exterior of the individual quantities of plastic material as they are pressed into position to prevent too rapid dehydration thereof.

[2] No opinion for publication.

ton H. Fralick doing business as Lanonite Company of America, Fralick Construction Company, Fralick Realty Company and/or American Stucco Company, a decree by default was entered on October 2, 1942. In Civil Action No. 836[2] where the defendants were Advance Construction Company, Inc., and Albert Salomon, a decree by default was entered on October 4, 1943. In Civil Action No. 1693[2] where the defendant was Ralph J. Emling doing business as Ralph J. Emling Roofing and Siding Company, a consent decree was entered on December 14, 1944. The complaint herein asks that the defendants Jack Castronovo, Albert Salomon, and Janet Salomon be adjudged in contempt for violation of the judgments in the three cases heretofore described.

The defenses of noninfringement and invalidity are here interposed. At the conclusion of the testimony the defendants moved for an order granting leave to amend their answers to conform to the evidence in the following respects: that the license agreement between plaintiff and J. D. Kaiser, his exclusive licensee for the State of Wisconsin, contained a provision, to wit: "8. For the duration of this contract or any extension thereof, Licensee agrees to devote all of his normal working time to the promotion of Perma Stone in connection with building construction or remodeling and improvements, and to sell and use only materials and methods furnished or approved by Licensor in writing * * *"; that under the terms of said license agreement and the enforced practice thereof the patentee has exacted as one of the conditions of said license that unpatented material, to wit, coloring matter used in connection with the invention, shall be furnished by plaintiff and that by attaching such condition the plaintiff patentee has enlarged his monopoly and that plaintiff is thus using his patents as the effective means of restraining competition with and in the sale of coloring matter.

At the trial the court indicated that this motion of the defendants to amend their answer should be granted, but no formal order to amend was entered. Transcript, p. 243. However, as plaintiff strenuously objects to the allowance of such amendment and has filed a 24-page brief in support of his objections, I have again given consideration to the defendants' motion.

Plaintiff contends that under Rule 12(h), Federal Rules Civil Procedure, 28 U.S.C.A. following section 723c, defendants have waived the defense to be interposed in the amendment to their answer. However, that rule provides: "A party waives all defenses and objections which he does not present either by motion as hereinbefore provided or, if he has made no motion, in his answer or reply, except * * *." As soon as the contract in question was brought to light during the course of the trial, the defendants did seek to raise the defense by motion to amend their answers under Rule 15(b), Federal Rules Civil Procedure. This rule provides: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; * * *. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

Plaintiff urges that the allowance of such a defense will prejudice his action, but he made no motion for a continuance. Rule 15(a) Federal Rules Civil Procedure, provides that after one amendment as a matter of course, a party may amend his pleading only by leave of court, or by written consent of the adverse party, but provides "leave shall be freely given when justice so requires." Under the circumstances I have determined that the defendants' motion for leave to amend their answers should be granted and an order to that effect has been filed.

Plaintiff sells to his licensees from 50,000 lbs. to 1,500,000 lbs. of coloring matter a year at a price ranging from $11\frac{1}{2}\cent$ to $20\cent$ per lb. The exclusive licensee in Wisconsin has no right to use any other coloring material without the written consent of the licensor. Plaintiff frankly admitted that the profit motive was an important consideration when he was asked:

"Question: Didn't the profit motive enter into the question at all? Answer: Yes."

■ In a long line of cases the Supreme Court has held that an owner of a patent may not condition a license so as to tie to the use of the patent the use of other materials, processes or devices which lie outside the monopoly of the patent.

In the case of Carbice Corp. v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819, the license agreement and the invoices provided "that Dry-Ice shall not be used except in Dry-Ice Cabinets or other containers or apparatus provided or approved by the DryIce Corporation of America." The court said at page 31 of 283 U.S., at page 335 of 51 S.Ct., 75 L.Ed. 819: " * * * But it (patentee) may not exact as a condition of a license that unpatented materials used in connection with the invention shall be purchased only from the licensor; and if it does so, relief against one who supplies such unpatented materials will be denied * * *." Among other cases condemning such an extension of the patent monopoly is Ethyl Gasoline Corp. v. United States, 309 U.S. 436, at page 456, 60 S.Ct. 618, 625, 84 L.Ed. 852 where the court said: "He may not, by virtue of his patent, condition his license so as to tie to the use of the patented device or process the use of other devices, processes or materials which lie outside of the monopoly of the patent licensed * * *." See also Motion Picture Patents Co. v. Universal Film Manufacturing Co., 243 U.S. 502, 37 S.Ct. 416, 61 L.Ed. 871, L.R.A.1917E, 1187, Ann.Cas. 1918A, 959; Morton Salt Co. v. G. S. Suppiger, 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363; and Mercoid Corp. v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376.

■ In view of the provisions of the license agreement hereinbefore described, the court will not assist the plaintiff by restraining those whom plaintiff alleges infringe his patents.

In the event it should be determined by a reviewing court either that the amendment should not have been allowed, or that the plaintiff was not estopped in this action by reason of the provisions of his license agreement, I should make known my views as to the validity of the claims of the patents here in issue.

■ In considering the four process claims of Patent No. 1,888,234 here in issue, we must keep in mind the file wrapper history. The claims of a patent must be interpreted with reference to cancelled or rejected claims, and an allowed claim cannot be read to cover what has been eliminated from the patent. Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 312 U. S. 654, 61 S.Ct. 235, 85 L.Ed. 132; I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429, 443, 47 S.Ct. 136, 71 L.Ed. 335.

Original Claim 3 provided: "A tool for applying plastic material to a wall comprising, a casing, a plunger movable therein, and means for moving the plunger with respect to the casing to force material from the casing onto the wall." This claim was rejected on Kruck No. 482,369, reference by Patent Office especially in view of Martin No. 843,956, on these grounds: "Kruck shows plastic material forced into position and left there, while Martin shows use of a flexible backing for the plastic material to be old." The applicant acquiesced by cancelling the claim.

Original Claim 5 read: "A tool for applying plastic material to a wall, comprising, a casing, a plunger movable therein, means for moving the plunger with respect to the casing, and means for preventing the adhesion of plastic material placed in the casing to the plunger." This claim was rejected by the Patent Office on Laskey No. 1,466,509, France No. 1,288,554, and Kruck No. 482,369. Applicant likewise acquiesced by cancelling this claim.

Claims 10, 11, and 12 of Patent No. 1,888,234 cover a tool for applying plastic

material to a wall or surface. These claims are not at issue in this suit. Claim 10 is typical and appears in the margin.[3]

It is well established that a patent cannot be claimed for a process for what inherently happens in a normal and intended operation of a device which is already the subject of a patent. In re Watson, 44 F. 2d 868, 18 C.C.P.A. (Patents) 712. A person cannot describe a machine or tool that will perform certain functions and then claim the function as a process or method claim. Interstate Folding Box Co. v. Empire Box Corp., 7 Cir., 68 F.2d 500. A valid patent cannot be obtained for a process which involves nothing more than the operation of a piece of mechanism or, in other words, for a function of a machine. Risdon Iron & Locomotive Works v. Medart, 158 U.S. 68, 77, 15 S.Ct. 745, 39 L.Ed. 899.

In Smith Engineering Works v. Nordberg Mfg. Co., 7 Cir., 68 F.2d 492, the court in an opinion by Judge Evans said 68 F.2d at pages 493–494:

"A process or art, as that word is used in the patent law, is an act or series of acts performed upon the subject matter to be transformed. Each act is ordinarily called a step. It is difficult to conceive of an accurate description of an act without the use of a verb. An inventor speaking to the world is required to describe (and to do so clearly) each step of his invention so the infringement may be avoided. * * *

"On the other hand, the mere function or effect of the operation of the machine cannot be the subject of a lawful process patent. The steps of a process claim may be performed by a machine as well as by hand. The validity of the claim, novelty and ingenuity appearing, however, does not depend upon the instrumentality by which the described act is performed. But the claim must contain an intelligent description of the act which constitutes the step. * * *"

The criticism which Judge Evans levels against the process claims in the Smith Engineering Works case applies with equal force to the claims which we are here considering. I conclude that each of the four process claims must be declared invalid because they describe the functions of the tool or device, and because they are not defined with sufficient particularity to inform the public so as to enable it to avoid infringement.

On the question of infringement, assuming Claims 3, 4, 6, and 7 to be valid, the Lanonite process used by defendant Polanis on premises owned by the defendant Zaharias did not infringe Claim 6, but did constitute infringement of Claim 3, 4, and 7.

I shall now consider Patent No. 1,960,276, of which Claims 1, 2, and 5 are in issue. Claim 1 is said by plaintiff to be a typical claim and is set forth in the margin.[4] The court will not assist the plaintiff in his suit, by reason of the provisions of the license agreement heretofore discussed. However, I feel it is incumbent upon me to express my opinion on the questions of validity and infringement.

In the prosecution of this patent the file wrapper history discloses an interesting

---

[3] Claim 10. A tool for applying plastic material to a wall surface comprising a casing having an open front and adapted to hold the quantity of plastic material, a plunger movable within the casing to press the plastic material onto the wall, handle means for moving the plunger, and means carried by the handle means for limiting the movement of the plunger to regulate the degree of pressure to which the plastic material is subjected and its thickness on the wall.

[4] Claim 1. A tool for applying plastic material to a corner formed by the juncture of two meeting walls to give the appearance of a block having substantial thickness, comprising a pair of hingedly connected sections, each of said sections having a surface formed to impart the desired configuration and finish to the plastic material and said sections being movable from a position at which their said surfaces form substantially continuations of each other to a position at which said surfaces are angularly disposed to conform to the angular disposition of the meeting walls forming the corner, means at the edges of said surfaces of both sections to retain a quantity of plastic material applied thereto when said surfaces are substantially in line, and a handle for each section.

development which is in accord with the conclusions I reached as to the invalidity of Claims 3, 4, 6, and 7 of Patent No. 1,888,234. Claim 7 of Patent No. 1,960,276 read: "The herein described method of applying plastic material to a corner formed by a juncture of two meeting walls, so as to resemble a stone block having substantial thickness, which consists in simultaneously pressing quantities of plastic material onto both walls by means of connected members whose surfaces are formed to represent the finish desired." This claim was rejected as being void for being the function of the tool.

But Claims 1, 2, and 5 involve the tool itself, and I have concluded that such claims are valid and show invention. One of the big problems confronting those applying plastic sidings simulating stone was to effect the appearance of a block of stone of substantial thickness at that point where two walls meet and form a corner. The demonstration given by plaintiff at the trial illustrates how closely the plastic material applied by plaintiff's device at a corner of meeting walls does resemble a block of stone. (A stone wall exposes two sides of a stone at the corner position.) Also by means of plaintiff's tools, Perma-Stone can be applied to either new construction or old. Its principal use is in the remodeling of old structures.

Defendants argue that the plastic material is forced out of the tool exactly the same in both of Miller's patents, and that it is not invention to be able to use two tools described in the first patent in order to obtain the same result at corners and angular surfaces. Defendant says this is merely an attempt by the patentee to extend the monopoly of his first patent.

The defense of double patenting cannot be sustained. Plaintiff's corner tool produces an entirely new result. The tools in the earlier patent were effective only on a two-dimension wall, but in many installations the siding operation could not very well cover just one wall, and had to be continued around corners to other walls of the structure. But no two tools described in the first patent could do the job required where two walls came together to form a corner. The three-dimension problem was solved by the corner tools of plaintiff, and in my opinion this amounted to invention.

But whether the tools used by defendants infringed plaintiff's device, however, presents a much closer question. It will be noted that plaintiff's tool comprises a pair of hingedly connected sections, each of said sections having a surface formed to impart the desired configuration and finish to the plastic material and said sections being movable from a position at which their surfaces form substantially continuations of each other to a position at which said surfaces are angularly disposed to conform to the angular disposition of meeting walls forming the corner, means at the edges of said surfaces of both sections to retain a quantity of the plastic material, and a handle for each section. The tools used in the Lanonite process are very similar, but do have rubber fins or strips fastened to the edges of the molds by edge guards that extend around the entire outer edge of the mold and project from the edge of the mold. The use of these rubber fins facilitates the vibrating of the mold against the wall and the rubber gives outwardly and releases excessive material. It is claimed that the vibration releases any excess water in the mixture. I conclude, however, that if the plaintiff were not estopped by his license agreement to obtain relief, the accused devices do infringe Claims 1, 2, and 5 of Patent No. 1,960,276.

Judgment may go for all defendants. Defendants' counsel may prepare proposed findings of fact and conclusions of law, and submit them to counsel for plaintiff.