## MILLER v. TILLEY et al.
### No. 13957.

United States Court of Appeals
Eighth Circuit.

Dec. 30, 1949.

Ira Milton Jones, Milwaukee, Wis. (Estill E. Ezell, St. Louis, Mo., on the brief), for appellant.

Alfred W. Petchaft, St. Louis, Mo., for appellees.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

The question for decision is whether the findings of the District Court that claims 3, 4 and 7 of United States Letters Patent No. 1,888,234 and claims 1, 2 and 5 of United States Letters Patent No. 1,960,276 were void for want of invention, are clearly erroneous. The District Court entered a judgment of dismissal of this action, in which the defendants (appellees) were charged by Edward J. Miller, the plaintiff (appellant), with having infringed the above specified claims of these two patents, which are owned by him. He seeks a reversal upon the ground that the court should have found that the claims in suit were valid and infringed.

Both patents were issued to Edward J. Miller,—No. 1,888,234 on November 22, 1932, upon an application filed November 9, 1929, and No. 1,960,276 on May 29, 1934, upon an application filed August 22, 1932. The first of these patents will be referred to as the "method patent," and the second as the "corner mold patent."

The method patent is entitled, "Method of and apparatus for applying wall finishes," and states: "This invention relates to certain new and useful improvements in wall finishes and refers more particularly to a method of applying a plastic material to resemble various types of stone and other similar surfaces." Claim 4, which is typical of the claims in suit of that patent, reads as follows: "4. The hereindescribed method of applying plastic material to form a wall finish which consists, in covering a tool whose surface is formed to resemble the finish desired with relatively thin flexible material, in placing a quantity of plas-

tic material on the flexible material, in pressing the plastic material onto the wall, and leaving the flexible material on the pressed surface."

The corner mold patent is entitled, "Apparatus for applying wall finishes." Claim 5, which may be regarded as typical of the three claims of the patent which are here involved, reads: "5. A tool for applying plastic material to a corner formed by two meeting walls, comprising a pair of hingedly connected applicators, each having a surface to receive plastic material and formed to impart the desired finish to the applied plastic material, means to hold a quantity of plastic material on each of said surfaces prior to its application to the corner, and a handle on each of said applicators to facilitate the application of pressure thereto and the swinging of one applicator on its hinged connection with the other about the corner."

The method patent, No. 1,888,234, describes and claims a process for applying plastic material (usually cement or concrete mixture, in a plastic state) to the walls of buildings by the use of a shallow mold with an irregular bottom surface which forms a face resembling that of stone. The mold shown in the patent has sides movable with respect to the bottom. A sheet of waxed paper is first placed in the mold; powdered coloring material is sprinkled on the paper; the mold is filled with the plastic material, and is then pressed against the wall to be treated, so that the material will adhere to the wall and will take the stone-like impression of the mold surface. When the mold is withdrawn, the plastic material adheres to the wall, and the waxed paper adheres to the face of the material. The purposes of the waxed paper are said to be to prevent the plastic material from sticking to the mold, to prevent the too rapid drying of the material, to protect against drippings, to obtain full use of the coloring matter, and to prevent sagging of the material after the withdrawal of the mold. The mold which is described in the method patent illustrates the means for applying a simulated stone veneer to a two-dimensional surface.

The corner mold patent, No. 1,960,276, discloses an apparatus for applying the plastic material to corners. This apparatus consists of two surface molds hinged together so that one of them may be swung around the corner of a wall after both molds have been filled with the material to be applied. As the molds are filled, they are held in flat, end to end, relationship, so as to allow both to be filled at the same time.

The plaintiff has made a commercial success of his business of using and licensing his method and molds for the veneering of walls of buildings with cement segments resembling stone. The defendants have used substantially the same method and molds for the same purpose.

In Miller v. Zaharias, D.C.E.D.Wis., 72 F.Supp. 29, the same plaintiff charged the defendant in that case with infringement of claims 3, 4, 6 and 7 of the method patent, and claims 1, 2 and 5 of the corner mold patent. The United States District Court for the Eastern District of Wisconsin held that the claims in suit of the method patent were invalid, and that the claims in suit of the corner mold patent were valid and infringed. That court, however, ruled that the nature of the plaintiff's licensing agreement was such as to preclude him from obtaining relief. On appeal, the Circuit Court of Appeals of the Seventh Circuit, in Miller v. Zaharias, 168 F.2d 1, held that the claims in suit of each of the patents were invalid,—those of the method patent because the claims in suit covered merely the function or effect of the operation of the tool or mold described in that patent, and constituted nothing more than directions as to how to use a patented device; and the claims in suit of the corner mold patent because of want of patentable invention.

We are convinced that the findings of the District Court, in the instant case, that all of the claims in suit of each of the patents are invalid for want of invention, are sustained by the record. The only approach to novelty disclosed by the method patent was the use of waxed paper

as a lining for the mold, the main purpose of which was obviously to prevent the plastic material from sticking to the mold. It is a matter of common knowledge that, long before Miller entered the field, waxed or oiled paper had been used in pots, pans and the like, for preventing various mixtures from sticking to the metal. What Miller did was to point out that the use of waxed paper as a lining for a mold would serve the purposes which one skilled in the ancient art of putting plaster, concrete, or cement, in a plastic state, upon a wall by the use of a mold, reasonably might anticipate. In any event, the District Court, under the evidence, was justified in concluding that the method patent disclosed nothing more than a slight advance in the art, fairly attributable to the skill of the calling.

So far as the claims in suit of the corner mold patent are concerned, it seems to us, as it did to the Circuit Court of Appeals of the Seventh Circuit in the Zaharias case, and to the District Court in the instant case, that no inventive genius, but only mechanical skill, was involved in hinging together two molds adapted to be used on a flat surface of the wall of a building in order to facilitate the application of the plastic material to the corners of the walls.

A detailed discussion of the prior art, as it existed at the time Miller applied for his patent, would serve no useful purpose. It is enough to say that the record demonstrates that at that time the art was old and crowded.

The standards of originality necessary to sustain a patent have, in recent years, been raised. See Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 90-92, 62 S.Ct. 37, 86 L.Ed. 58; Picard v. United Aircraft Corp., 2 Cir., 128 F.2d 632, 636, certiorari denied 317 U.S. 651, 63 S.Ct. 46, 87 L.Ed. 524; Frank Adam Electric Co. v. Colt's Patent Fire Arms Mfg. Co., 8 Cir., 148 F.2d 497, 502, 503; Koochook Co., Inc. v. Barrett, 8 Cir., 158 F.2d 463, 466; Alemite Co. v. Jiffy Lubricator Co., 8 Cir., 176 F.2d 444, 448. The principles upon which the decisions in the cases above referred to are based require the affirmance of the judgment in the instant case.

 The contention of the plaintiff that he was prejudiced by the adoption by the District Court, without notice to him, of findings formulated by counsel for the defendant at the court's request, is without merit. It is entirely proper for a district judge to request counsel for the prevailing party to prepare findings, and that practice is common and conventional in many jurisdictions. After a case has been submitted and the trial judge has determined which party is entitled to prevail, it is for the judge to determine whether he will formulate the necessary findings himself, have counsel for the prevailing party prepare findings for the court, or settle the findings on notice. Whatever method a trial judge may follow, he assumes full responsibility for the findings made or adopted, which, when signed and filed by him, are the findings of the court.

The judgment appealed from is affirmed.