FENNER, Judge.
Appellant, Specialty Restaurants Corporation (SRC), appeals from a judgment of the trial court, without a jury, in favor of respondent, Dean’s Fairmount Company (Dean), in the amount of $1,501,685.80.
SRC was in the business of operating various theme restaurants. A wholly owned subsidiary of SRC, Kansas City Hill Restaurant Corporation (K.C. Hill) operated a restaurant in Kansas City known as Baby Doe’s Matchless Mine Restaurant (Baby Doe’s). Baby Doe’s was constructed by K.C. Hill and SRC on a hill southwest of downtown Kansas City, Missouri, with a panoramic view from the site overlooking the city. The restaurant site was owned by Dean and leased to K.C. Hill under a Lease Agreement entered into between the parties on April 1, 1978, (Lease Agreement). The term of the Lease Agreement was for 50 years to March 31, 2028.
The Lease Agreement provided for the letting of approximately 174,240 sq. ft. of Dean’s ground for a minimum rent over the term of the lease of $999,996.00. The rent was to be paid in monthly installments of $1,666.66. In addition to the minimum monthly rent, percentage rent was provided whereby Dean was to receive a sum, if any, by which 2.5% of the monthly gross receipts from the restaurant’s sales exceeded the minimum monthly rent.
The Lease Agreement provided that K.C. Hill was to construct the restaurant at its expense, with the work performed in a good and workmanlike manner in accordance with sound construction practices. Under the terms of the Lease Agreement, K.C. Hill was required, prior to construction, to obtain a site test which indicated to its satisfaction that the existing site condition, including, but not limited to, soil conditions and lateral and subjacent support of the leased premises, was acceptable for KC Hill’s intended use.
SRC guaranteed performance of the Lease Agreement by K.C. Hill and provided there was “no default,” the guarantee would expire “when, and only when, each of the following conditions had been met: (a) the improvements (as defined in the Lease) have been completed, paid for and are ready for use in accordance with the Lease Agreement and other documents, (b) [Dean] shall have been paid in full, including interest thereon, for all liabilities, and, (c) when (1) year has expired since the opening of the restaurant for business.”
Default was defined under the terms of the Lease Agreement as “a failure to perform any other covenant or condition of this Lease on the part of the Tenant.”
SRC acted as general contractor on the construction of Baby Doe’s. SRC encountered problems during construction of the restaurant with support piers slipping and tilting away from the position in which they were set and some support posts being off center.
These problems were monitored by SRC during construction and after Baby Doe’s opened for business in September of 1980. The situation in regard to the tilting piers continued to be monitored until July 30, 1985, when Baby Doe's suffered major damage as a result of the structure sliding on the hill on which it was built. The restaurant was torn down as a result of extensive damage from sliding on the hill.
The Lease Agreement provided that in the event of any damage or loss to the restaurant, the tenant was required to promptly repair or rebuild the restaurant so as to make the building at least equal in value to the building existing immediately prior to such occurrence. Before beginning any such repairs or rebuilding, or letting any contracts in connection therewith, the tenant was required to submit for Dean’s approval, which approval Dean agreed not to unreasonably withhold, completed and detailed plans and specifications for the rebuilding of the restaurant.
Prior to obtaining Dean’s approval, SRC entered into a construction contract for the rebuilding of the restaurant with A.L. Huber & Son, Inc. Dean was not satisfied with the construction contract, did not ap *474 prove said contract and the restaurant was not rebuilt.
Insurance proceeds of approximately $1,000,000.00 were paid as a result of the loss to the restaurant facility and this litigation ensued by way of claim and counterclaim with all parties arguing entitlement to damages for breach of the terms of the Lease Agreement. At the conclusion of the court tried case, judgment was entered in favor of Dean and against K.C. Hill and SRC in the amount of $1,501,685.80.
We review the points raised in this appeal under the standard providing that upon appellate review of cases tried by the court without a jury, the judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). Appellate courts should exercise the power to set aside a judgment of the trial court on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong. Id. Conflicts in the evidence are for the trial court to resolve and the facts and all reasonable inferences must be taken in accordance with the result reached by the trial court. Arnett v. Johnson, 689 S.W.2d 836 (Mo. App.1985).
In its first point on appeal, SRC argues that the trial court erred in finding that the Lease Agreement was violated by failure to construct the restaurant in a good and workmanlike manner and in violation of the plans and specifications.
There is no dispute that the Lease Agreement required that the restaurant be constructed in a good and workmanlike manner and in accordance with the plans and specifications. However, SRC argues that any variances from the plans and specifications were de minimis.
SRC’s own construction superintendent testified that not only was Baby Doe’s not built in accordance with the plans and specifications, but that in almost forty years of construction experience he had never seen any other buildings constructed more out of sync with the plans and specifications than Baby Doe’s. Furthermore, there was expert testimony that the foundation elements for Baby Doe’s were not constructed in accordance with the plans and specifications and that necessary soil testing and soil preparation was not done.
Contrary to SRC’s argument, there was substantial evidence in the record to show that the restaurant was not constructed in a good and workmanlike manner and that construction was not in accordance with the plans and specifications. SRC’s first point is denied.
SRC argues second that the trial court erred in holding that the Lease Agreement had been breached by the failure of SRC to provide complete plans and specifications for the rebuilding of the restaurant.
The Lease Agreement provided that in the event that construction was to be performed by an outside general contractor, K.C. Hill and SRC were to provide Dean with a performance and completion bond. No such bond was provided and there was expert testimony that the failure to provide a performance bond renders plans and specifications inadequate. Additionally, there was evidence presented to show that the plans and specifications presented to Dean for rebuilding the restaurant were inadequately specific regarding engineered fill to ensure that the same structure deficiencies evident in the original construction would not be repeated.
There was substantial evidence to show that SRC and K.C. Hill failed to provide complete plans and specifications for the rebuilding of the restaurant. SRC’s second point is denied.
In its third point, SRC argues that the trial court erred in holding that SRC was bound to its guarantee of the lease because the evidence showed that the one year period had expired and each and every condition for termination of the guarantee had been satisfied.
SRC’s guarantee was a continuing guarantee subject to release on the conditions set forth supra. The Lease Agreement also provided that the guarantee would not *475 expire if SRC or K.C. Hill was in default under the terms of the Lease Agreement.
As discussed in response to SRC’s first point herein, there was substantial evidence to show that Baby Doe’s was not constructed in a good and workmanlike manner and in accordance with the plans and specifications as required under the terms of the Lease Agreement. Accordingly, SRC and KC Hill were in default under the terms of the Lease Agreement, and therefore, SRC’s guarantee continued. SRC’s third point is denied.
In its fourth point, SRC argues that the trial court erred in finding that SRC and K.C. Hill had breached the Lease Agreement by failing to maintain adequate insurance.
The Lease Agreement required that SRC and K.C. Hill maintain adequate insurance coverage. The trial court found, as the record supports, that Dean had suffered damages in the amount of $1,501,685.80, and that the insurance coverage of $1,000,-000.00 was inadequate to cover said damages. The trial court did not err by finding inadequate insurance coverage. SRC’s fourth point is denied.
In its fifth point, SRC contends that the trial court erred by adopting verbatim the findings of fact, conclusions of law and judgment entry because, in so doing, the findings, conclusions and judgment were not the result of an independent judicial determination.
Although no Missouri case has directly addressed this issue, guidance can be obtained from the federal courts that have had occasion to deal with this argument.
In Miller v. Tilley, 178 F.2d 526, 528 (8th Cir.1949), the court rejected the argument raised here by appellant and held:
“It is entirely proper for a ... judge to request counsel for the prevailing party to prepare findings, and that practice is common and conventional in many jurisdictions. After a case has been submitted and the trial judge has determined which party is entitled to prevail, it is for the judge to determine whether he will formulate the necessary findings himself, have counsel for the prevailing party prepare findings for the court, or settle the findings on notice. Whatever method a trial judge may follow, he assumes full responsibility for the findings made or adopted, which, when signed and filed by him, are the findings of the court.”
Likewise, the court in Louis Dreyfus & Cie v. Panama Canal Co., 298 F.2d 733, 738 (5th Cir.1962), while somewhat critical of the practice in every case stated:
“In analyzing the significance that should be attached to the adoption by the trial judge of findings drafted by one of the litigants, common sense may be a better guide than ideal decision-making. As an ideal matter it would be desirable for the'trial judge to draft his own findings in every case. This would supply insurance, for the benefit of the appellate court, that the trial judge did indeed consider all the factual questions thoroughly and would guarantee that each word in the finding is impartially chosen. In the workaday world, however, it may often be necessary for a hard-pressed district court to take assistance from counsel in articulating his decision. This assistance may be especially helpful in a case involving complex and technical subject matter, as in patent cases, where the aid of a specialist may be but a shade short of indispensable. In such cases it must be assumed that the trial judge considered the case from all angles and reached his decision independently before placing reliance on the proposed findings. The ultimate question that the judge must face is whether to enter judgment for plaintiff or defendant, and he must decide this question on his own before deciding which proposed findings to accept. Since his mind must range over the same questions to make this decision that it would to write the findings the result will be the same, and his factual determinations should, as in any other case, be set aside only if clearly erroneous.”
Finally, the United States Supreme Court in United States v. El Paso Natural Gas Co., 376 U.S. 651, 656, 84 S.Ct. 1044, 1047, 12 L.Ed.2d 12 (1964), has had occasion to address the issue raised by appellant. In El Paso, the District Court had adopted verbatim the findings of fact and conclu *476 sions of law of the appellees. The United States Supreme Court noted that while the insight of a disinterested mind may be more helpful to an appellate court, “[tjhose findings, though not the product of the workings of the ... judge’s mind, are formally his; they are not to be rejected out of hand, and they will stand if supported by the evidence.” Id. at 656, 84 S.Ct. at 1047.
This court finds the logic of those cases to be both practical and persuasive. An examination of the record indicates that the findings and conclusions are supported by the evidence. Therefore, there can be no basis for a determination that the findings and conclusions of the trial court were clearly erroneous. SRC’s fifth point is denied.
In its sixth point, SRC argues that the trial court erred in entering judgment in the amount of $1,501,685.80 for the reason that under the court’s findings the market value of the restaurant was $1,250,000.00 with lost rentals of $217,043.74 for total damages of $1,417,043.74.
SRC’s argument under this point is not supported by the record. In detailed and extensive findings of fact the trial court made findings as to past rent due under alternative theories. Under paragraph 79 of its findings the court found that lost past rent for the relevant period “based on a regression analysis computed on all operations and based on actual historical rentals paid between 1980 and 1985 ... is $217,043.74.” The trial court also found under paragraph 80 of its findings that the lost past rent for the relevant period “based on a regression analysis computed on normalized operations ... of Baby Doe’s ... is $251,685.86.”
In its order the trial court adopted the $251,685.86 figure for lost past rent which, when added to the market value for the restaurant of $1,250,000.00, totals $1,501,-685.86.
The trial court’s order was supported by its findings. SRC’s seventh point is denied.
The judgment of the trial court is affirmed.
All concur.